1  Tai Dang
2  CSP-Solano
3  Fac. 2, Bldg. 9, Cell 215
4  Vacaville, CA 95696
5  CDC No. P-83131
6  In Pro Se

FILED

MAR 0 4 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7
8      In The United States District Court for the Northern District of California
9
10  Tai Dang,
                            Petitioner          C 07-3268 SI
11
                                                Opposition To Motion To Dismiss Habeas
12      V.                                      Corpus Petition As Untimely
13  D.K. Sisto, Warden,
                            Respondent.
14
15
16      Petitioner hereby moves the court to reject respondent's motion
17  to dismiss the Petition for failure to comply with the statute of
18  limitations set forth in 28 U.S.C. § 2244(d)
19
20                          I.
21              Statement of the Case
22      Following trial by a Santa Clara County jury, Petitioner was
23  convicted of first degree murder and being a felon in Possession of a
24  firearm, along with an enhancement that Petitioner Personally discharged
25  a firearm causing death. The trial court sentenced Petitioner to
26  52 years to life in state Prison.
27
28      On September 24, 2002, the California Court of Appeal affirmed

1.

1  the judgment of conviction. (Petition, exhibit A.) On December 11, 2002,
2  the California Supreme Court denied review. (Petition, exhibit
3  C; Respondent's exhibit 1.)
4
5  On May 29, 2007, Petitioner filed a habeas corpus Petition in
6  Santa Clara County Superior Court. (Petition, exhibit E.)
7  That court denied the habeas Petition; however, the date of that
8  denial is unavailable.
9
10  On 17, 2007, Petitioner filed a habeas corpus Petition in the
11  California Court of Appeal, which was denied November 30 2007. (See
12  Motion to Dismiss (hereafter, "Motion," exhibit 2.)
13
14  To date Petition for writ of habeas Corpus is Pending in the
15  California Supreme Court.
16
17  Meanwhile, on June 19, 2007, Petitioner mailed his federal habeas
18  Corpus Petition which was filed in this Court on June 21, 2007.
19
20  Petitioner offers the following explanation for his substantial
21  delay in filing his current federal habeas Corpus Petition. (Please
22  refer to next Page.)
23                          //
24                          //
25                          //
26                          //
27                          //
28                          //

2.

# II
## Preliminary Personal History

Petitioner immigrated to America in November 1988, at age 15, and resided in Santa Clara County.

Petitioner attended high school, but he dropped out of school while attending the ninth grade, due to academic difficulties and language barrier.

Petitioner has one daughter with his common-law wife Tien Le.

# III
## Statement of the Facts

On August 17, 2000, Appellate Attorney Arthur Dudley sent petitioner an introductory letter to petitioner. (See Exhibit D, at.Pp.D(1) to D(2).)

On September 25,2000, Appellate Attorney Arthur Dudley sent petitioner a copy of a letter he sent to the Clerk's office - Felony Appeals of the Santa Clara County Superior Court wherein he requested augmentation of the record on appeal. See Exhibit D, at Pp. D(3) to D(4).

On October 10, 2000, Appellate Attorney Arthur Dudley Sent petitioner a letter, explaining he was still working on getting a full and complete record on appeal. And he

responded to certain issues that concerned me. (Se Exhibit
D, at Pp. D(5) to D(6).)

    On December 28, 2000, Appellate Attorney Arthur Dudley
Sent petitioner a letter, informing petitioner that he was
still working on the appellant's opening·brief, and he
discussed other matters of petitioner's concern, (See Exhibit
D, at Pp. D(7) to D(8).)

    On January 25, 2001, Appellate Attorney Arhtur Dudley
sent petitioner a letter, informing petitioner that he
requested an extension of time to file the appellant's opening
brief, that he received the complete file that petitioner's
trial attorney had, and that he suggested that petitioner's
trial attorney transferred possession of a rather expensive
watch, which belonged to petitioner to him (Appellate
Attorney). (See Exhibit D, at Pp. D(9) to D(10).)

    On February 5, 2001, petitioner sent Appellate Attorney
Dudley a letter, authorizing him to take temporary possession
of petitioner's watch. (See Exhibit D, at P. D(11).)

    On March 19, 2001, Petitioner sent Appellate Attorney
Dudley a letter, requesting a complete copy of the record
on appeal. (See Exhibit D,at P. D(12).)

    On March 29, 2001, Appellate Attorney Dudley sent

petitioner a letter, informing petitioner that due to the length of the record on appeal, in order for petitioner to obtain a copy thereof, copying and mailing costs would be in the neighborhood of approximately $250.00. (See exhibit D, at Pp. D(13) to D(14).)

On May 14, 2001, Appellate Attorney Dudley sent petitioner a letter, voicing his hope that petitioner had received a copy of the appellant's opening brief, discussing some of the issues raised in the appellant's opening brief, and promising to file a petition for writ of Habeas Corpus in conjunction with the appeal, alleging that petitioner received ineffective assistance of counsel at trial. (See Exhibit D, at Pp. D(15) to D(17).)

On May 17, 2001, petitioner sent Appellate Attorney Dudley a letter, acknowledging receipt of the appellant's opening brief and raising a concern about the omissions of the inconsistency of two key prosecution's witnesses therein. (See Exhibit D. at Pp. D(18) to D(19).)

On May 23, 2001, Appellate Attorney Dudley sent petitioner a letter acknowledging receipt of petitioner's letter, dated May 17, 2001, concerning petitioner's inquiries about the various inconsistent statements given by prosecution witnesses Ky Nguyen and Phap Le. Attorney Dudley explained the appellate Court procedure with regard to the record on

1  appeal is considerably different than how a jury considers

2  the facts at trial. (See Exhibit D, at Pp. D(20) at D(22).)

3

4       On July 11, 2001, Appellate Attorney Dudley sent

5  petitioner a copy of a letter he had written trial Counsel

6  Javier Rios. In that letter, appellate Attorney Dudley asked

7  Counsel Rios to give his reasons for failing to make certain

8  proper and timely objections to the prosecutions admittance

9  of certain evidence. (Se Exhibit D, at Pp. D(23) to D(32),

10  D(33) to D(34).)

11

12       On October 4, 2001, Appellate Attorney Dudley sent

13  petitioner a copy of a letter he had written to Deputy

14  District Attorney Joanne Mc Cracken. (See Exhibit D, at Pp.

15  D(35) to D(36).)

16

17       On October 4, 2001, Appellate Attorney Dudley also

18  sent petitioner a letter, informing petitioner that he had

19  not received back from Counsel Javier Rios a written response

20  to his letter of July 11, 2001, concerning his inquiries

21  about Counsel Rios's representation of petitioner in the

22  Santa Clara County Superior Court. (See Exhibit D, at Pp.

23  D(37) to D(38).)

24

25       On October 31, 2001, Appellate Attorney Dudley sent

26  petitioner a letter informing petitioner that he had finally

27  received the respondent's brief and that he was preparing

28

an appellant's reply brief. Attorney Dudley further informed
petitioner that he finally heard back from trial court
attorney, Javier Rios, and that he was still trying to get
a full and complete copy of the tape recording of all of
the conversations between petitioner and prosecution witness
Tina Ha. (See Exhibit D, at Pp. D(39) to D(40).)

On November 8, 2001, petitioner sent Appellate Attorney
Dudley, expressing fears about trial court attorney knowing
the issues being considered for the appeal. (See Exhibit
D, at Pp. D(41) to D(42).)

On February 19, 2002, Appellate Attorney Dudley sent
petitioner a copy of a letter he wrote to trial attorney,
Javier Rios. In that letter, Attorney Dudley informed trial
attorney, Javier Rios that he (Attorney Dudley) still had
not received any response from trial attorney Rios. (See
Exhibit D, at P. D(43).)

On April 19, 2002, petitioner sent Appellate Attorney
Dudley a letter thanking him for what he had done and
inquiring as to whether, or not, trial counsel refusal to
respond to his inquiries would preclude him from preparing
 and filing the petition for writ of Habeas Corpus in
conjunction with the appeal, since all the briefs were
submitted. (See Exhibit D, at P. D(44).)

1    On September 12. 2002, petitioner sent appellate
2    Attorney Dudley a letter, regarding a letter by one named,
3    Nhan Nguyen, which raised a particular interest in appellate
4    attorney, Dudley. Petitioner also sought to know whether
5    Attorney Dudley would continue to represent him in the event
6    the Court of Appeal reversed the conviction or whether
7    Attorney Dudley would continue to represent him in the event
8    the Court of Appeal affirmed the judgment and conviction,
9    with respect to a petition for review. (See Exhibit D, at
10   P. D(45).)

11

12   On October 11, 2002, Appellate Attorney Dudley sent
13   petitioner a letter, with the Court of Appeal's opinion
14   enclosed. Attorney Dudley explained that he would be filing
15   a petition for review in the California Supreme Court as
16   the next course of action. Attorney Dudley then explained
17   that if the California Supreme Court denied review, he would
18   file a petition for writ of Habeas Corpus in the Santa Clara
19   County Superior Court - he never filed a Habeas Corpus
20   petition in conjunction with the appeal. (See Exhibit D,
21   at Pp. D(46) to D(47).) Petitioner also received a copy of
22   the petition for rehearing. (Id.)

23

24   On November 5, 2002, Petitioner sent Appellate Attorney
25   Dudley a letter,, regarding miscellaneous matters. (See Exhibit
26   D, at P. D(48).)

27

28

1    On March 17,2004, Petitioner made a formal request

2  for the record on appeal. (See Exhibit D, at P. D(49).)

3

4    On March 24, 2004, petitioner sent Appellate Attorney

5  Dudley a letter, inquiring about the status of the petition

6  for rehearing filed in the California Court of Appeal in

7  October 2002. (See Exhibit D, at P. D(50).)

8

9    On May 31, 2004, after petitioner did not receive a

10  response from Attorney Dudley in regard to petitioner's letter

11  of March 24, 2004, petitioner inquired about the status of

12  the petition for rehearing directly in the California Court

13  of Appeal. (See Exhibit D, at P. D(51).)

14

15    On June 16, 2004, petitioner wrote Attorney Dudley

16  a letter, informing him that since he did not respond to

17  petitioner's inquiry about the status of the petition for

18  rehearing, for which he filed in the California Court of

19  Appeal on, about, October 11, 2002, petitioner sought that

20  information from the Court of Appeal, who, on or about June

21  15, 2004, sent petitioner a copy of its, October 22, 2002,

22  order modifying its opinion and denying petitioner's petition

23  for rehearing (Exhibit B, attached hereto) and a copy of

24  the California Supreme Court's, December 11, 2002, order

25  denying petitioner's petition for review (Exhibit C, attached

26  hereto). (See Exhibit D, at Pp. D(52) to D(53).)

27

28

1    On June 17, 2004, petitioner wrote a letter to the
2  California Supreme Court, requesting a Court Clerk's stamped
3  file copy of its order denying review and asking whether the
4  clerk's record indicated that a copy of order was sent to
5  Appellant Attorney Dudley, or not. (See Exhibit D, at P.
6  D(54).)

7

8    On June 17, 2004, petitioner made a second request for
9  the record on appeal, via, a letter to Appellate Attorney
10 Dudley. (See Exhibit D, at P. D(55).)

11

12   On June 22, 2004, petitioner wrote Attorney Dudley a
13 letter, apologizing for proclaiming that he did not send
14 petitioner a copy of the "Petition for Review." (Notewell,
15 between June 16, 2004 and June 21, 2004, petitioner recalled
16 he had previously received a copy of the "Petition for Review,"
17 but forgot about it because he gave it to one who was assisting
18 petitioner in the writing of the letter to attorney, Dudley.)
19 (See Exhibit D, at P. D(56).) However, petitioner emphatically
20 reiterated that Attorney Dudley did not notify him of the
21 California Supreme Court's denial of the petition for review.
22 (Id.)

23

24   On June 24, 2004, because Attorney Dudley refused, or
25 failed, to respond to petitioner's letters, petitioner  filed
26 a complaint in the State Bar of California, alleging that
27 Attorney Dudley had not communicated with petitioner

28

(10)

1  since November 5, 2002 and that Attorney Dudley had not
2  notified petitioner that the California Supreme Court denied
3  petition for review on December 11, 2002. Petitioner requested
4  the State Bar of California to order Attorney Dudley to prepare
5  a declaration, in support of any future pleading petitioner
6  might have to engage, in an effort to overcome the potentiality
7  of a future habeas corpus petition, federal or state, being
8  denied as untimely. (See Exhibit D, at Pp. D(57) to D(60).)
9
10      On August 13, 2004, petitioner wrote Attorney Dudley
11  a letter, reminding Attorney Dudley that, according to the
12  Chaplin at California State Prison- Calipatria, he was supposed
13  to have consulted with petitioner. However, as of the date
14  of the August 13, 2004, letter petition had not heard from
15  attorney Dudley in nearly two years. Also petitioner complained
16  about not having received the record on appeal, even though
17  the case had long been finalized. (See Exhibit D, at Pp. D(61)
18  to D(62).)
19
20      On August 19, 2004, the State Bar of California sent
21  petitioner a notice, acknowledging receipt of petitioner's
22  complaint and giving petitioner's complaint the inquiry No.04-
23  24640. (See Exhibit D, at P. D(63).)
24
25      On September 28, 2004, the State Bar of California,
26  sent petitioner a letter informing petitioner that his
27  complaint had been reviewed to determine whether Attorney
28

1   Dudley violated the State Bar Act and /or the rules of
2   professional Conduct and whether there was a basis for
3   investigation for prosecution of his illegal conduct. The
4   State Bar concluded that the matter did not warrant action,
5   for the reasons set forth in the September 28, 2004, letter.
6   (See Exhibit D, at P. D(64).)

7

8        On October 4, 2004, petitioner sent Attorney Dudley
9   a letter explaining that petitioner had not filed an complaint
10  to the State Bar to undermine Attorney Dudley's intelligence,
11  but rather to protect petitioner's penal interest, excepting
12  the assistance Attorney Dudley conveyed to the State Bar that
13  he was willing to offer me. (See State Bar of California letter
14  at D(64)) and admitting that petitioner did receive a letter
15  from Attorney Dudley, wherein he explained the alternatives
16  regarding the federal habeas Corpus petition; however,
17  petitioner asserted, as best a his memory would serve him,
18  that there was not any language about the Antiterrorism and
19  Effective Death Penalty Act Statute of Limitations, in that
20  letter. (See Exhibit D, at Pp. D(65) to D(67).)

21

22       On November 7, 2004, Attorney Dudley sent petitioner
23  a letter, stating that it was his understanding that petitioner
24  did not receive his letter explaining the federal habeas corpus
25  procedure and petitioner did not know on his (petitioner's)
26  own that procedure. Attorney Dudley also explained that he
27  had taken steps much earlier to prepare the federal habeas

28

(12)

corpus petition and that he still had his notes in that regard, promising to have those matters finished for petitioner review within two weeks of the date of that letter. (See Exhibit D. at P. D(68).)

On January 18, 2005, petitioner sent Attorney Dudley a letter, wherein petitioner informed Dudley that had transferred to another institution and gave him the new address. (See exhibit D, at P. D(69).)

On June 20, 2005, petitioner sent Attorney Dudley a letter wherein petitioner reminded Dudley that in his letter, dated November 7, 2004, he stated he was going to prepare the federal habeas corpus and other paperwork, for petitioner to review and sign. That federal habeas corpus was supposed to have been completed two weeks from November 7, 2005, but to the date of the June 20, 2005, petitioner had not heard from Attorney Dudley. (See Exhibit D, at P. D(70).)

On June 26, 2005, petitioner, because he did not receive the record on appeal from Attorney Dudley, filed a motion for production of Transcripts in the Superior Court for the County of Santa Clara. (See Exhibit D, at Pp. D(71) to D(79).)

On August 16, 2005, petitioner filed a second complaint with the State Bar of California, with an accompanying letter. In that letter, petitioner highlighted his grivances as

1  follows:

2      1) Attorney Dudley refused, or failed, to communicate
3  with petitioner.

4      2) Attorney Dudley failed to advise petitioner of the
5  federal statute of limitations for filing a federal habeas
6  petition.

7      3) Petitioner requested that the State Bar order Attorney
8  Dudley to send him the record on appeal. (See Exhibit D, at
9  Pp. D(80) to D(8ℓ).)

10

11      On September 14, 2005, petitioner sent Attorney Dudley
12  a letter, proclaiming that petitioner had for several months
13  attempted to correspond with Attorney Dudley; however, Dudley
14  would not respond to any of the letters petitioner sent.
15  Petitioner further made a formal request for the record on
16  appeal. (See Exhibit D, at P. D(82).)

17

18      On October 28, 2005, petitioner sent a letter to the
19  California Appellate program for the Sixth District, notifying
20  them that since Attorney Dudley had discharged his services
21  as petitioner's attorney, petitioner had been trying to get
22  the record on appeal, to no avail. Petitioner requested
23  assistance. (See Exhibit D at P. D(83).)

24

25      On November 8, 2005, the Sixth District Appellate program
26  sent both Attorney Dudley and petitioner a letter. In the
27  letter sent to Attorney Dudley the Sixth District  Appellate

28

1   program enclosed a copy of petitioner's letter of October

2   28, 2005, and stated that petitioner's case was closed nearly

3   three years, so perhaps Attorney Dudley had sent petitioner

4   the record on appeal and it got lost in the prison system.

5   Attorney Dudley was asked to respond to petitioner's letter.

6   (See Exhibit D, at Pp. D(84) to D(85).)

7

8   On November 9, 2005, the State Bar of California sent

9   petitioner a notice acknowledging receipt of petitioner's

10  (second) complaint and giving petitioner's complaint the

11  inquiry number 05-17692. (See Exhibit D, at Pp. D(86).)

12

13  On February 21, 2006, petitioner received a letter from

14  one named Michael H, Hummer, who was assigned by the State

15  Bar to investigate petitioner's complaint, under a new

16  investigation case number of 06-O-10112. Mr Hummer made inquiry

17  into several issues. Please refer to the letter attached

18  hereto. (See Exhibit D, at Pp. D(87) to D(88).)

19

20  On March 3, 2006, petitioner sent a letter of response

21  to Mr. Hummer's letter of February 21, 2006. (See exhibit

22  D at P. D(89).)

23

24  On June 8, 2006, Mr. Hummer sent petitioner a letter,

25  informing petitioner that he had completed the investigation

26  and had forwarded the case to Deputy Trial Counsel Wonder

27  Liang for further action. Mr. Hummer further conveyed that

28

1    he had received no response from Attorney Dudley to his letters

2    of April 3 and April 28, 2006, and Mr. Hummer requested

3    petitioner to send him a letter of authorization, so he could

4    obtain petitioners legal Mail Log from CSP-Calipatria. (See

5    Exhibit D, at Pp. D(90) to D(91).)

6

7        On July 25, 2006, petitioner sent Mr. Hummer  the letter

8    of authorization, authorizing him to obtain petitioner legal

9    mail Log from CSP-Calipatria. (See Exhibit D, at Pp. D(92)

10   to  D(94).)

11

12       As it can be seen, in Mr. Hummer's letter of February

13   21, 2006, Appellate Attorney Dudley provided Mr. Hummer with

14   a copy of a letter, dated February 2, 2003, which attorney

15   Dudley alleged that he sent to petitioner. (See exhibit D,

16   at Pp. D(87) to D(88).) In that letter, Attorney Dudley

17   purported that he explained to petitioner the future avenues

18   of review in the federal district court by way of a petition

19   for a writ of habeas corpus, and the necessity that such a

20   petition would have to be filed in the United States District

21   Court for the Northern District of California by no later

22   than one year and ninety days from December 11, 2002, which

23   was the date that the California Supreme Court denied the

24   petition for review in petitioner's matter.

25

26       Petitioner, however, did not ever receive such a letter.

27   Therefore, petitioner has provided a copy of his prison Legal

28

1  Mail Log covering years 2000 to 2004. (See Exhibit E, attached
2  hereto.) If the letter in question was sent to the prison
3  on February 2, 2003, allowing for normal U.S. Postal Office
4  to deliver the letter to the prison and for the prison's
5  internal mailing system to get the letter to petitioner,
6  petitioner should have received the letter on or around
7  February 11, to February 15, 2003. Yet, there was no entry
8  in petitioner's Legal Mail Log, which verifies that legal
9  Mail was sent to the Prison the month of February 2003. (Id.)
10
11  On January 17, 2007, petitioner received a package from
12  Attorney Dudley. In that letter, Attorney Dudley advised
13  petitioner that because of discussions he had with an attorney
14  with the State Bar, he was sending petitioner the completed
15  habeas corpus petition for petitioner's filing in federal
16  district court. A copy of that habeas corpus petition is
17  attached as exhibit F. Attorney Dudley also included a
18  declaration executed by himself showing what he had allegedly
19  done in the past concerning his original preparation of that
20  petition, along with petitioner's unawareness of the time
21  requirements for filing such a petition. (See Exhibit F, at
22  unnumbered pages.)
23
24  On April 23, 2007, petitioner received a letter, dated
25  April 18, 2007, from the State Bar of California. Through
26  that letter petitioner was put on notice that the State
27  Bar had been actively prosecuting petitioner's appellate
28

1  attorney, Arthur G. Dudley, and that on February 6, 2007 the

2  State Bar entered into stipulation as to Facts and disposition

3  with Attorney Dudley. In the stipulation, Attorney Dudley

4  stipulated to committing acts of professional misconduct in

5  violation of rule 3-110(A) of the Rules of Professional Conduct

6  and Section 6068(M) of the Business and Professions Code.

7  And on February 23, 2007, the State Bar Court issued its Order

8  Regarding Stipulation. A copy of that Stipulation and Order

9  is  attached hereto as Exhibit G.

10

## IV
## Relevant Law Pertaining to California's Timeliness Rule

11

12

13          Because habeas corpus is an extraordinary remedy that

14  "was not created for the purpose of defeating or embarrassing

15  justice but  to promote it" (**In re Alpine**, (1928) 203 Cal.

16  731, 744, 265, P. 947), and the availability of the writ

17  properly must be tempered by the necessity of giving due'

18  consideration to the interest of the public in the orderly

19  and reasonably prompt implementation of its laws and to the

20  important public interest in the finality of judgment, a habeas

21  petitioner, in California, must justify any "significant"

22  or "substantial" delay in seeking habeas corpus relief. (**In**

23  **re Clark,** (1993) 5 Cal. 4th 750, 782, 21 Cal. Rptr. 509, 530.)

24

25          In regard to capital cases, California Supreme Court

26  published expressed timeliness standards for the filing of

27  a petition for a writ of habeas corpus (See Supreme Court

28

1   Policies Regarding Cases Arising From Judgments of Death,

2   eff. June 6, 1989, mod. eff. December 21, 1992, Standards

3   1-1.1 to 1-3 (policies)), establishing a presumption of

4   timeliness if a petition "is filed within 90 days of the final

5   due date for the filing of an appellant's reply brief." (**In**

6   **re Clark**, supra, 5 Cal. 4th at 783,21 Cal. Rptr. at 531.)

7

8   Although the "Policies" created a presumption of timeliness,

9   in capital cases, they did nothing  to clarify the application

10  of the basic "Substantial delay" standard with regard to

11  noncapital cases. In fact, there are no standards for

12  determining what period of time or factors constitute

13  "substantial delay" in noncapital cases. And there are, also,

14  no standards for determining what factors justify any

15  particular length of delay. Still California's timeliness

16  rule applies to both capital and noncapital cases.

17

18      California Courts measure substantial delay from the

19  time the petitioner or his or her counsel knew, or reasonably

20  should have known, of the information offered in support of

21  the claim and the legal basis for the claim. (**In re Clark,**

22  supra, 5 Cal 4th at 784-783, 21 Cal. Rptr. at 532.)

23  Furthermore, a petitioner must allege **with specificity** facts

24  showing when information offered in support of the claim was

25  obtained, and that the information offered in support of the

26  claim was obtained, and that the information either was known,

27  not reasonably should have known at any earlier time. (Id.)

28

1  Petitioner bears the burden of establishing, through

2  his specific allegations, which may be supported by any

3  relevant exhibits the absence of substantial delay. In

4  addition, a claim, or part thereof, that is substantially

5  delay  neverless will be considered on the merits if the

6  petitioner can demonstrate good cause for the delay. Good

7  cause for substantial delay may be established if, for example,

8  the pititioner can demonstrate that because he was conducting

9  an **ongoing** investigation into, at least, one potentially

10  meritorious claim, the petitioner delayed presentation of

11  one or more other known claim, in order, to avoid the piecemeal

12  presentation of claim, but good cause is not established by

13  prior counsel's asserted uncertainty about his or her duty

14  to conduct a habeas corpus investigation and to file an

15  appropriate habeas coupus petition.

16

17  Also, a claim that is substantially delayed without

18  good cause, and hence is untimely, nevertheless will be

19  entertained on the merits of the petitioner can demonstrate:

20  (i) that error of constitutional magnitude led to a trial

21  that was so fundamentally unfair that absent the error no

22  reasonable judge or jury would have convicted the petitioner;

23  (ii) that the petitioner is actually innocent of the crime

24  or crimes of which he was convicted (iii) that the death

25  penalty was imposed by a sentencing authority that had such

26  a grossly misleading profile of the petitioner before it that

27  absent the trial error, or omission, no reasonable judge or

28

1  Jury would have imposed a sentence of death; (iv) that the Petitioner
2  was convicted or sentenced under an invalid statue. (Citation
3  omitted.)

## V

## Memorandum of Points and Authorities

7  Petitioner implicitly contend that he is entitled to equitable
8  tolling based on the following reasons. In <u>Pace</u> v. <u>DiGuglielmo</u>,
9  544 U.S. 408, 418 (2005), the U.S. Supreme Court held that,
10  assuming without deciding the equitable tolling is available, "a
11  litigant seeking equitable tolling bears the burden of establishing
12  two elements: (1) that he has been pursuing his rights diligently,
13  and (2) that some extraordinary circumstance stood in his way."
14  (See also <u>Fail v Hubbard</u>, 315 F.3d 1059, 1061-1062 (9th Cir. 2002)
15  ["In this circuit, equitable tolling is warranted only by extraordinary
16  circumstances beyond the Petitioner's control which made it
17  impossible to file a timely federal habeas Petition"].) The Petitioner
18  bears the burden of showing that equitable tolling is warranted
19  in the particular circumstances of his case. (<u>Miranda v. Castro</u>,
20  292 F.3d 1063, 1066 (9th Cir. 2002).)

22  Respondent noted that the Supreme Court has expressly rejected
23  the notion that attorney error justifies equitable. (See "Motion,"
24  at P. 3, lnn. 27-28.) In <u>Laurence v. Florida</u>, 127 S.Ct. 1079,
25  Respondent asserted the Petitioner argued that his counsel's
26  mistake in miscalculating the limitations period to include the time
27  for seeking certiorar review after the state habeas proceeding
28  entitled him to equitable tolling. The Supreme Court disagreed,

21

1    stating, "If credited this argument would essentially equitably toll
2    limitations periods for every person whose attorney missed a deadline.
3    Attorney miscalculation is simply not sufficient to warrant equitable
4    tolling particularly in the postconviction context where prisoners have no
5    constitutional right to counsel." (Id., at 1085.) (See "Motion," at pp.
6    3, ln. 28; 4, lnn. 1-6.)

7

8        In addition, Respondent further noted that the Ninth Circuit has
9    also held that attorney error does not justify equitable tolling.
10    (Miranda v Castro, supra, 292 F.3d at 1066-1067 [attorney wrote
11    letter to Petitioner stating wrong due date for federal habeas
12    petition]; Frye v Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) [attorney
13    miscalculated deadline for statute of limitations] Green v. White,
14    223 F.3d 1001, 1003 (9th Cir. 2000) [counsel relied on inapplicable case].)
15    And furthermore in Miranda the Court found that because a
16    federal habeas Petitioner had "no right to the assistance of his
17    appointed appellate counsel regarding post-conviction relief, it follows
18    that he did not have the right to that attorney's 'effective'
19    assistance either." (Miranda, 292 F.3d at 1068.) Accordingly, the
20    Respondent explained, the Ninth Circuit rejected the argument that
21    when counsel undertakes to advise a federal habeas Petitioner
22    that advice must be accurate, and that the failure to give
23    accurate advice requires equitable tolling. (Id.; see Frye, supra,
24    273 F.3d at 1146.) (Motion, at p. 4, lnn 7-21.)

25

26        Petitioner submits that Respondent's legal argument is amissed
27    of his factual allegations which formulated the basis of his
28    complaint against his appellate counsel. First, Petitioner's claim

1 against his appellate counsel does not involve a per se Post-
2 conviction relief context. Rather the error alleged herein were
3 omissions made by appellate counsel while he was performing
4 his duty as appellate counsel on direct appeal, as of right.

5

6   In Douglas v. California, (1963) 372 U.S. 353, the U.S.
7 Supreme Court held that refusing to appoint counsel for an
8 indigent defendant on his or her appeal directly from a
9 criminal conviction was a denial of equal Protection of the law.
10 The court in In re Henderson (1964) 61 Cal. 2d 541, 39 Cal.Rptr.
11 373 held that Douglas required appointment of counsel on
12 appeal of a misdemeanor as well as a felony. California affords
13 defendants in criminal matters the full scope of this right of
14 appeal. (See, e.g., People v. Medina (1972) 6 Cal. 3d 484.)

15

16   With this in mind, the U.S. Supreme Court recognized that
17 "adequate and effective appellate review" was impossible without
18 a trial transcript or adequate substitute. Therefore, the U.S.
19 Supreme Court held that States must Provide trial records
20 to inmates unable to buy them. (Griffin v. Illinois, 351 U.S.
21 12, 20 (1956); see also, Eskridge v. Washington Prison Bd. 357 U.S.
22 477 (1963) [Public defender's approval may not be required to obtain
23 coram nobis transcript]; Rinaldi v. Yeager, 384 U.S. 305 (1966)
24 [unconstitutional to require reimbursement for cost of trial transcript
25 only from unsuccessful imprisoned defendants]; Long v. District Court
26 of Iowa, 385 U.S. 192 (1966) [State must Provide transcript of
27 Post-conviction Proceeding]; Gardner v. California, 393 U.S. 367 (1969)
28 [State must Provide habeas corpus transcript].)

23

1  Accordingly, Petitioner has established that he had: (1) the
2  right to appeal, (2) the right to appointment of appellate counsel,
3  and (3) the right to trial transcript (i.e., the right to a copy of
4  the record on appeal).

5

6  In California, Petitioner's copy of the trial transcripts is
7  sent to the California Appellate Project, who appoints appellate
8  attorney to execute appeals. Once the Appellate Project appoints
9  an appellate attorney to a case, they transfer the record of appeal
10  to that appellate attorney; it then becomes that appellate attorney's
11  duty, as appointed appellate counsel, to turnover the record of appeal
12  to the client upon completion of his or her representation.

13

14  The ABA/BNA Lawyer's Manual on Professional Conduct
15  Provides in rule 1.16(d):

16          Upon termination of representation, a lawyer shall take
17          steps to the extent reasonably Practicable to Protect a
18          client's interests, such as ..., surrendering Papers and
19          Property to which the client is entitled.

20

21  And, the California State Bar requirement for the return of
22  files is contained in Rule 2-111(A)(2), which Provides:

23

24          In any event, a member of the State Bar shall not
25          withdraw from employment until he has taken reasonable
26          steps to avoid foreseeable Prejudice to the rights of his
27          client, including ..., delivering to the client all Papers and
28          Property to which the client is entitled and complying with

24

1         applicable laws and rules. (California Rules of Court, Rules
2         of Professional Conduct of the State Bar of California.)

4     The duty of the Previous attorney to forward the file to the client,
5  or substitute counsel, is well established. (See, e.g., Finch v.
6  State Bar, 28 Cal. 3d 659, 665, 621 P. 2d 253, 256, 170 Cal. Rptr.
7  629, 632 (1981).) For instance, in Academy of California Optometrists,
8  Inc. v. Superior Court, 51 Cal. App. 3d 999, 124 Cal. Rptr. 668 (1975);
9  the California Court of Appeal held that an attorney's lien to secure
10 the client's file until the fee had been paid was a violation of
11 Public Policy and a violation of the lawyer's ethical duties. (Id., at
12 1006, 124 Cal. Rptr at 672.) Thus, the court required the attorney
13 to return the client's files, ordering that the trial court "enter an
14 order commanding . . . [lawyer] to forthwith deliver to Petitioner
15 [client] all files, documents, and Papers in his Possession
16 relating to the action." (Id.)

18    It, therefore, is a breach of the duty imposed by rule 2-III(A)
19 (2) to retain a client's case files after discharge, in that an
20 attorney's work Product belongs absolutely to the client whether
21 or not the attorney has been Paid for his services. (Weiss v.
22 Marcus, (1975) 51 Cal. App. 3d 590, 599, 124 Cal. Rptr. 297.) And it is
23 settled that rules relating to the withdrawal of an attorney from
24 employment "apply with no less force to the discharge of attorney.
25 His duty to his client is not altered by the circumstances of who
26 terminates the relationship. (Academy of California Optometrists,
27 Inc. v. Superior Court, supra, 51 Cal. App. 3d at 1005-1006.)
28            //

1    Here, after Petitioner's state judgment became final on
2    March 11, 2003, 90 days after the California Supreme Court
3    denied review, Appellate Counsel Dudley did not turn over
4    Petitioner's file until around January or February of 2006.
5
6        Notwithstanding respondent's assertion that "Petitioner
7    actually received counsel's file on October 13, 2005 (See "Motion,"
8    at P.7, In.1), Petitioner wrote a letter to the Sixth District
9    Appellate Program. In that letter, Petitioner unequivocally stated,
10   "[F]or some time now since Mr. Dudley has completed his
11   duties as my attorney I have been trying to acquire my
12   record on appeal from him. I have written Mr. Dudley many
13   letters in attempts to get him to forward the subject material
14   to me.... All these measures have failed ..." (See Exhibit
15   D, at P. D(83), attached hereto.) The aforementioned letter was
16   dated October 28, 2005, fifteen days after October 13, 2005,
17   the date respondent purported Petitioner received "counsel's
18   file."
19
20       As it occurred, Attorney Dudley did not discharge his duty
21   to turn over Petitioner's file until after nearly three years
22   passed from the date the judgment became final, creating
23   an extraordinary circumstance beyond the Petitioner's control
24   which made it impossible to file a timely federal habeas Petition.
25   (See Fail v. Hubbard, 315 F.3d 1059, 1061-1062 (9th Cir. 2002).)
26
27       Also, the Ninth Circuit has held that where counsel's
28   misconduct goes beyond "ordinary attorney negligence" and is

26

1  "sufficiently egregious" it may constitute an extraordinary
2  circumstance warranting equitable tolling. (Spitsyn v. Moore,
3  345 F.3d 796, 800 (9th Cir. 2003).) In Spitsyn, the attorney was
4  hired to file a federal habeas Petition but failed to do so, which
5  the Ninth Circuit found was "so deficient as to distinguish
6  it from the merely negligent Performance of counsel." (Id. at
7  798-801; accord Baldayaque v. United States, 338 F.3d 145
8  (2d Cir. 2003); Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001).)
9  The Court remanded the case for the district court to
10  determine whether he had "exercised reasonable diligence
11  in Pursuing the matter, under the circumstances he faced."
12  (Id., at 802.)

13

14      On this Point, Petitioner exercised reasonable diligence
15  in Pursuing the matter regarding the record on appeal. For
16  instance, as mentioned above herein, Petitioner:
17      1.) On March 17, 2004, Petitioner made a formal request for the
18  record on appeal.[1]/ (See Exhibit D, at P. D(49), attached
19  hereto.)
20      2.) On June 17, 2004, Petitioner made his second request for the
21  record on appeal. (Id., at P. D(55).)
22      3.) On August 13, 2004, Petitioner mentioned the record on appeal
23  in a letter sent to Attorney Dudley. (Id., at P. D(61), P. D(62).)
24      4.) On June 26, 2005, Petitioner filed a motion, with the Superior
25  Court for Production of transcripts. (Id., at PP. D(71) to D(79).)

26

27  [1]/ Even though March 17, 2004, was after the expiration date to file a federal habeas
28  Petition, Petitioner, prior to March 17, 2004, had made a myriad of status inquiry to Dudley.
(See Exhibit D, attached hereto.)

1    5.) On August 16, 2005, Petitioner filed a complaint with the
2 State Bar, complaining about Attorney Dudley not sending the
3 record on appeal among other things. (Id., at PP. D(80) to D(81).)
4
5    6.) On September 14, 2005, Petitioner made a formal request,
6 again for the record on appeal. (Id., at P. D(82).)
7
8    7.) On October 28, 2005, Petitioner sought assistance from the
9 Sixth District Appellate Program regarding Attorney Dudley's failure
10 to turn over Petitioner's file. (Id., at P. D(83).)
11
12    Moreover, federal Courts have long proclaimed that they must,
13 initially, presume that the State Courts were correct in their
14 conclusions; and although the State courts' conclusion may not
15 be binding on federal Courts, federal Courts should give great
16 weight to the considered conclusions of a coequal state
17 judiciary. (Citations omitted.)
18
19    Having said this, Petitioner request the Court to judiciously
20 consider the considered conclusion of the State Bar Court
21 as regards Appellate Attorney Dudley's Performance.
22
23    The State Bar Court, first and foremost, found that Attorney
24 Dudley's misconduct harmed Petitioner. (See Exhibit G, at P.
25 3, No. 4.) And under a section labelled "Conclusions of Law," the
26 State Bar Court noted that:
27    (1) By failing to timely inform Dang that his Petition for
28 Review was denied, which triggered the time in which Dang had to file

28

1  a habeas corpus Petition, failing to timely advise Dang about the deadlines
2  regarding the federal habeas corpus Petition, and failing to timely assist
3  Dang with filing a request to file a late federal habeas corpus Petition,
4  after agreeing to do so, [Attorney Dudley] recklessly and repeatedly
5  failed to perform with competence in violation of rule 3-110(A) of
6  the Rules of Professional Conduct. (Id., at P. 7, Paragraph 9.)

7

8      (2) By failing to timely inform Dang about the California
9  Supreme Court's denial of his Petition for review, [Attorney Dudley]
10  failed to inform Dang of a significant matter in which [Attorney
11  Dudley] had agreed to provide legal services in violation of Business
12  and Professional Code section 6068(m). By failing to respond to
13  Dang's letters of March 2004, June 16, 2004, June 17, 2004, June 20,
14  2005, and September 14, 2005 [which included letters regarding the
15  record on appeal], [Attorney Dudley] failed to respond to reasonable
16  status update requests in violation of Business and Professions Code
17  section 6068(m). (Id., at P. 7, Paragraph 10.)

18

19    Thereafter, the State Bar Court noted, under a section labelled
20  "Aggravating Circumstances" that, under Standard 1.2(b)(iv),
21  although [Attorney Dudley] provided Dang with another copy of the
22  federal habeas corpus Petition [Attorney Dudley's] failure to timely
23  perform services on behalf of Dang caused Dang to miss the
24  deadline for timely filing a federal habeas corpus Petition, signifi-
25  cantly harming Dang. (Id., at P. 8, Paragraph 6.)

26          //
27          //
28          //

29

1   Petitioner submits that the claims Presented in the current
2   federal habeas corpus Petition are not all exhausted. However, as
3   this Court is aware Petitioner filed, in conjunction with the current
4   federal habeas corpus Petition a motion for a stay and abeyance,
5   which was denied without Prejudice to Petitioner submitting a
6   motion with the Proper showing as required by Rhines v. Webber,
7   544 U.S. 269, 277-78 (2005).) (See Exhibit H, "Order," at P. 3,
8   lnn. 10-21.) Petitioner has resubmitted that motion for the Court's
9   consideration In light of the foregoing.

10
11      For all the above reasons, Petitioner has shown that
12  extraordinary circumstances or egregious attorney misconduct
13  occurred that he was Pursuing his rights diligently and that all
14  of the circumstances caused him to file a late Petition. Thus,
15  Petitioner Prays: that this Court deems equitable tolling appropriate
16  in this matter.

17
18      Dated February 27, 2008

19
20          Respectfully Submitted,

21
22          David Turner

23          David Turner, Writ Writer and
24          Next Friend for Tai Dang

25
26
27
28

30

## Verification

I, Tai Dang, State:

I am the petitioner in this action. I have read both
the foregoing and the forthcoming facts, regarding the
explanation for filing a delayed petition for a writ of habeas
Corpus, and the facts stated herein are true of my own
knowledge except as to those matter that are herein stated
based on my own information and / or belief, and as to those
matters, I believe them to be true and correct.

I declare under penalty of perjury that the foregoing
is true, and that this verification was Executed on this
_29_ th day of _February_, 200**8**, in Vacaville,
California.

```
                            -------------------
                            Tai Dang  Petitioner

                            David Turner
                            Writ Writer and Next Friend
                            for Tai Dang
```

(31)

## DECLARATION AND PROOF OF SERVICE BY MAIL

I, _Tai Dang_, declare under the penalty of perjury that I am over the age of 18 years, ( ) and not a party, or ( ✓ ) am a party to this action, and reside in Solano County, at P.O. Box 4000, (Cell #_9/215_) Vacaville, California, 95696-4000.

That on _February 28_, 200_8_, I deposited in the United States Mail at California State Prison - Solano, Vacaville, California a copy of the attached hereof:

_Opposition to motion to dismiss habeas Corpus Petition_

in a sealed envelope with postage fully prepaid, and addressed to:

_Office of the Attorney General_
_455 Golden Gate Ave., Suite 11000_
_San Francisco, CA  94102_

I declare under the penalty of perjury that the foregoing is true and correct. This declaration was executed on this _February, 28_, 200_8_, at CSP-Solano, Vacaville, California, 95696-4000.

_David Turner_
~~DECLARANT~~ Next Friend