# EXHIBIT COVER PAGE:

Exhibit: ___A_____

Description of this exhibit: COURT OF APPEAL'S OPINION

RECEIVED

MAR – 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Number of pages of this exhibit: ___16___ pages

JURISDICTION: (Check only one)

_____ Municipal Court

__XX__ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: _____

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H021681 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C9927769) |
| v. | **F I L E D** |
| TAI QUOC DANG, | SEP 2 4 2002 |
| Defendant and Appellant. | Court of Appeal - Sixth App. Dist. By _____ DEPUTY |

A jury found defendant Tai Quoc Dang guilty of first degree murder and being a felon in possession of a firearm. It also found true an allegation that defendant personally discharged a firearm causing death for purposes of a 25-year-to-life sentence enhancement. On appeal, defendant contends that (1) the trial court erred by admitting over objection evidence showing consciousness of guilt, (2) the trial court erred by admitting over objection evidence attacking the credibility of a witness, (3) the trial court erred by instructing the jury in the language of CALJIC No. 2.50.1 (uncharged crimes need only be proved by a preponderance of evidence), (4) the trial court erred by admitting irrelevant evidence, (5) a witness's nonresponsive answer prejudiced the case by suggesting that defendant was involved in another murder, and (6) he received ineffective assistance of counsel because trial counsel failed to object to certain evidence and argument and conducted a deficient cross-examination of a witness. We affirm the judgment.

## BACKGROUND

Defendant and Tina Ha entered the Hoan My Restaurant in San Jose and sat at table 14 near the cash register. Eventually, defendant rose, walked around the restaurant, and talked to various patrons. When he got to table 11, he sat down and began to argue with Khanh Nguyen. After 5 to 10 minutes, defendant got up and left the restaurant. He returned in 15 minutes, walked over to table 11, pulled out a gun, and shot Nguyen in the face, killing Nguyen. Defendant then left the restaurant. Ha saw defendant shoot Nguyen as did Ky Nguyen, who was returning to table 11 from the restroom. The restaurant's owner, Loc Vo, called the police. Everyone in the restaurant (10 to 20 people) fled before the police arrived. Vo told the police that he did not see the shooting. The police found defendant's fingerprint on a glass on table 14 and on the front door.

The next day, defendant and Ha traveled to the apartment of Linda Tran in Sacramento. When Ha brought up the subject of the shooting in the restaurant, defendant explained that Nguyen had "said a lot of bad things about his mom that he didn't like, and he got angry." Defendant stayed at Tran's for several months, and Ha regularly visited him on weekends. When Ha again brought up the subject of the shooting and asked defendant why he "had done it," defendant recited the same explanation as before (that Nguyen had made statements against his mother). By this time, defendant and Ha had developed a serious relationship and Ha was in love with defendant. At some point, defendant told Tran that he had nowhere else to go because he had shot someone in the head in San Jose in a dispute over control of the cafes.

Sacramento police eventually arrested defendant. San Jose police then interrogated defendant. Defendant gave them a false name and false Sacramento address; when the police confronted him with his real identity, he denied such and denied that he had ever been to the Hoan My Restaurant or to San Jose. The police recorded telephone calls between defendant and Ha in which defendant instructed Ha to mislead the police

2

about her identity, the "thing about the murd–," her being in San Jose, and the witnesses in the restaurant.

## CONSCIOUSNESS OF GUILT EVIDENCE

False statements indicate a consciousness of guilt on the part of a defendant. This is true both when the statement is made out of court and when it is made while defendant is on the stand testifying. (*People v. White* (1995) 35 Cal.App.4th 758, 772-773.) Although false statements or testimony alone may be insufficient to support a guilty verdict because " ' "disbelief of evidence is not the equivalent of affirmative evidence to the contrary," ' " they do have " ' "probative force in connection with other evidence" ' " of guilt and thus may be considered as part of the prosecutor's total case. (*People v. Amador* (1970) 8 Cal.App.3d 788, 791-792; see also *People v. Mendoza* (1987) 192 Cal.App.3d 667, 673 ["[f]alse statements which 'are apparently motivated by fear of detection, or which, like devious explanations of the possession of stolen goods, suggest there is no honest explanation for incriminating circumstances' may be used as evidence of the accused's guilt"]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [listing defendant's false statement to police regarding whereabouts on the night of the murder as a factor supporting jury's finding of guilt].)

The San Jose Police recorded their interrogation of defendant in which defendant denied his identity and denied being present at the restaurant, specifically, and in San Jose, generally, at any time. The trial court admitted a tape recording of the interrogation into evidence. It ruled admissible, over defendant's Evidence Code section 352 objection, a series of arrest records aimed at refuting the denials made by defendant in the interrogation. References to an arrest and charges were redacted, and the prosecutor referred to the incidents when addressing the jury as "prior police contact."[1] The records

---

[1] Defendant refused to stipulate that he was the person in the arrest records but agreed to the redaction and euphemism.

3

generally established defendant's identity via booking photographs, fingerprints, and descriptions and showed that defendant had given San Jose addresses as his residences. One of the records referred to defendant's involvement in an assault at the Hoan My Restaurant that occurred approximately one month before the murder. Also in this category of evidence, a probation officer testified that, in interviewing defendant following defendant's 1994 conviction for burglary, defendant had given a San Jose address as his residence and stated that he had resided in San Jose for six years.

Defendant asserts that it "would not take a rocket scientist to conclude that these records were arrest records." He concludes that the records constitute highly prejudicial "bad character" evidence. He contends that fundamental policies underlying Evidence Code section 352 required exclusion of the evidence.[2] According to defendant, "If evidence is merely cumulative with respect to other evidence which the prosecution may use to prove the same issue, it is excluded under a rule of necessity." Defendant's point seems to be that the prosecutor could have impeached the interrogation denials with less prejudicial evidence (by using driver's license, utility, and bank records, for example) and that it was the prosecutor's burden to show that there was no other credible way to prove the desired facts. Defendant's analysis is erroneous.[3]

Defendant's argument proceeds from the premise that "[e]vidence that involves crimes other than those for which a defendant is being tried is admitted only with caution,

---

[2] Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[3] In his opening brief, defendant first contended that the evidence was inadmissible under Evidence Code section 1202 (generally concerning impeachment of hearsay evidence). But he waived the issue by failing to raise it below (Evid. Code, § 353) and, in his reply brief, concedes that the statute is inapplicable because the evidence in question is not hearsay because it was offered to show consciousness of guilt rather than truth.

4

as there is the serious danger that the jury will conclude that defendant has a criminal disposition and thus probably committed the presently charged offense. [Citations.] . . . [T]o be admitted, evidence of other crimes must be relevant to some material fact at issue, must have a tendency to prove that fact, and must not contravene other policies limiting admission, such as those contained in Evidence Code section 352." (*People v. Thompson* (1988) 45 Cal.3d 86, 109; cf. *People v. Ewoldt* (1994) 7 Cal.4th 380, 404; *People v. Thompson* (1980) 27 Cal.3d 303, 314-316.)

Under the so-called "rule of necessity" cited by defendant, "If [other crimes] evidence is 'merely cumulative with respect to other evidence which the People may use to prove the same issue,' " it may be regarded as unnecessary and (in light of its potential for prejudice) excluded on that basis. (*People v. Thompson, supra,* 27 Cal.3d at p. 318.)

But this rule is simply a component of the balancing process that a trial court undertakes when ruling on an Evidence Code section 352 objection. It is a guide to evaluate the probative value of the other crimes evidence. As explained in *People v. Schader* (1969) 71 Cal.2d 761, 774-775, footnotes omitted: "Probative value and prejudice obviously are not commodities subject to quantitative measurement. Nonetheless, we may identify some of the guidelines which courts follow in performing the balancing process described generally above. The chief elements of probative value are relevance, materiality and necessity. [¶] Before permitting the jury to hear evidence of other offenses the court must ascertain that the evidence (a) 'tends logically, naturally and by reasonable inference' to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue."

In short, the rule of necessity is a guide for the trial court and does not affect the traditional analysis of an Evidence Code section 352 question on appeal. We therefore

5

emphasize what guides us on an appeal that seeks review of an Evidence Code section 352 ruling.

It is the exclusive province of the trial court to determine whether the probative value of evidence outweighs its possible prejudicial effect. (*People v. Sassounian* (1986) 182 Cal.App.3d 361, 402.) And the trial court's exercise of discretion on this issue will not be disturbed on appeal absent a clear showing of abuse. (*Ibid.*) "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" (*Troxell v. Troxell* (1965) 237 Cal.App.2d 147, 152.) "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." (*People v. Preyer* (1985) 164 Cal.App.3d 568, 573-574.) This rule requires that the reviewing court engage in all intendments and presumptions in support of the decision and consider the evidence in a light most favorable to the prevailing party. (*People v. Condley* (1977) 69 Cal.App.3d 999, 1015.) It also requires that the party claiming abuse of discretion affirmatively establish the point. (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958.)

Defendant fails to carry his burden on appeal. Nowhere does he frame an abuse-of-discretion argument. He merely reargues his position instead of focusing on the factors supporting the trial court's decision and explaining why it was irrational to rely on those factors. His legal point is simply that the prosecution had the burden to disprove that the other crimes evidence was cumulative. But defendant cites no authority for the proposition. Moreover, the proposition is illogical because it requires the prosecution to

6

prove a negative, i.e., that no evidence short of the other crimes evidence can prove the desired facts.

A prosecutor is generally entitled to tell his or her story with the most persuasive and forceful evidence. (*People v. Scheid* (1997) 16 Cal.4th 1, 16-17.) It follows that, when making an Evidence Code section 352 objection to other crimes evidence, it is incumbent upon the defendant to raise the argument and convince the trial court that the evidence is cumulative by making an affirmative showing that evidence short of the other crimes evidence could be used to prove the relevant facts.

## CREDIBILITY EVIDENCE

"Evidence that a witness is afraid to testify is relevant to the credibility of the witness. [Citation.] An explanation of the witness's fear is relevant to the jury's assessment of the witness's credibility and is well within the discretion of the trial court." (*People v. Feagin* (1995) 34 Cal.App.4th 1427, 1433.) It is not necessary to show that the defendant made the threats against the witness personally, or the witness's fear of retaliation is directly linked to the defendant for the evidence to be admissible. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368.)

The prosecutor asked Vo whether (1) one month before the murder, the police came to his restaurant to investigate whether defendant and others had attacked a restaurant patron (Vo answered that the incident occurred), (2) "guys who you found to be a little scary or intimidating hung out in your restaurant" (Vo affirmed that a few people with tattoos would come once or twice a week and that people with tattoos made him nervous), (3) he paid protection to defendant or other people in the restaurant or let customers eat for free (Vo denied such), and (4) someone was trying to get control of the restaurant (Vo denied such). She also asked a detective whether, based on his interviews of Vo, he believed that Vo knew who shot Nguyen. Defendant advanced numerous objections to these questions, principally grounded on Evidence Code section 352.

7

According to defendant, "the stated purpose of the prosecution for the presentation . . . of the above-described evidence, as to witness Loc Vo, and the one accepted by the trial court, was to show that Loc Vo had a fear of making a statement incriminating anyone of the shooting in this case and thus was not willing, either in his interview with the police or his testimony at trial, to identify defendant as the shooter." Defendant argues that the trial court erred by overruling his objections to the evidence because (1) the prosecution failed to establish the relevance of Vo's state of mind (by demonstrating from evidence or other witnesses that Vo's testimony was inconsistent or suspect), and (2) Vo's impeachment was not critically essential to the prosecutor's case and the impeachment served only to call the jury's attention to prejudicial evidence (namely, that defendant was associated with members of a street gang). Defendant contends that "All of the above-discussed criteria for excluding the impeachment evidence in question exist in this case."

Defendant has again failed to properly frame and argue a cognizable abuse-of-discretion appellate issue. By urging that the applicable criteria for exclusion of the evidence existed in this case, defendant again simply reargues his position instead of focusing on the factors supporting the trial court's decision and explaining why it was irrational to rely on those factors and admit the evidence.

"Arguments should be tailored according to the applicable standard of appellate review." (*Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388.) Failure to acknowledge the proper scope of review is a concession of a lack of merit. (*James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.) " '[I]t is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondent. An appellant is not permitted to evade or shift his [or her] responsibility in this manner.' [Citations.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 102.) Stated differently, "[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the

8

judgment. It is entitled to the assistance of counsel. Accordingly, every brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 594, p. 627.)

## CALJIC NO. 2.50.1

At defendant's request, the trial court agreed to instruct the jury in the language of CALJIC No. 2.50 and 2.50.1 and as to a stipulation. According to defendant's trial counsel, he requested the instructions in order to give "the jury sufficient guidance so that they use the [other crimes] evidence properly." The trial court accordingly told the jury the following.

"Evidence has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial. This evidence, if believed, may not be considered by you to prove that the defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining, if it does tend to show, a motive for the commission of the crime charged, the attitude of the witness Loc Van Vo towards the defendant, and that the defendant may have been in the Hoan My Restaurant. For the limited purpose for which you may consider this evidence, you may weigh it in the same manner as you do in this case."

"Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a crime other than those for which he is on trial.

"The parties stipulate to the following: That the assault committed in the Hoan My Restaurant on October 21, 1998, about 30 days before the instant offense that's alleged in the Information, if committed by the defendant, is a crime. You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the defendant committed this other crime."

9

The trial court then instructed the jury in the language of CALJIC No. 2.50.2 (definition of preponderance of the evidence).

Defendant now contends that, "under the facts and circumstances of this case, it was error for the trial court to instruct that the other, uncharged crimes need only be proved by a preponderance of the evidence." He urges that the evidence of the other crimes evidence was used for general circumstantial evidence (e.g., motive) and, as such, must therefore be proved beyond a reasonable doubt.

Defendant invited any error because he requested the instruction. (*People v. Medina* (1995) 11 Cal.4th 694, 763 [where defense counsel requests CALJIC No. 2.50.1, "any error in giving it must be deemed invited error"].)

Defendant replies that he did not invite the error because the clerk's transcript shows that the trial court instructed the jury in the language of CALJIC No. 2.50.2 at the prosecutor's request. There is no merit to the claim. CALJIC No. 2.50.2 is simply a definition that, logically, ought to be given if the substantive instruction (CALJIC No. 2.50.1) is given. Defendant requested the substantive instruction and it is the giving of the substantive instruction that he now attempts to challenge.

## IRRELEVANT EVIDENCE

Defendant objected to evidence that the investigation of the murder was "difficult"; that the witnesses displayed a level of dishonesty; that a judge issued a warrant for defendant's arrest; and that Ha and Tran did not know defendant to have a job. He contends that "While each of the individual items of inadmissible evidence just discussed hereinabove may not by itself be enough to constitute prejudicial error for a reversal of defendant's convictions in this case, when considered collectively, and along with the inadmissible evidence discussed in issue numbers 1 and 2 hereinabove, the totality of the errors is prejudicial and cannot be overcome by any harmless error analysis."

10

As we have discussed, defendant has failed to demonstrate any error in the first two issues he raised. We therefore need not evaluate whether these admittedly inconsequential claims of error in fact constitute error and amount to prejudicial error when considered with prejudice already shown.

## NONRESPONSIVE ANSWER

During in limine proceedings, the trial court granted defendant's request to exclude reference to defendant's suspected involvement in a San Francisco homicide. During trial, the prosecutor questioned Ha about her telephone conversation with defendant while defendant was in jail. She asked: "At this point in the conversation, you were talking with [defendant] about whether or not he has outstanding warrants; is that right?" Ha answered affirmatively. The prosecutor then asked: "Had [defendant] committed other crimes that he had not been arrested for, as far as you knew? Is that what you were referring to?" Ha replied: "I was just trying to ask what that means because I wasn't sure, and I thought it was a good sign." While cross-examining Ha, defendant elicited the following in response to a question about whether she told the police that she wanted to kill herself: "The reason I said that word or that line was because the police asked me if I know anything else about Tai doing any other murder." Defendant then withdrew the question, and the trial court instructed the jury as follows: "With respect to this subject matter and allegedly the witness saying something about what she was gonna do to herself, counsel has withdrawn his question. And the answer that she had given or was starting to give is also stricken from the record. This is an area that you are not to speculate on, whatsoever. [¶] What she was gonna do to herself had to do with the issue of stress. That answer, you can't take into consideration, whatsoever. Any insinuation that's suggested by a question, of course, is not evidence. And, in fact, when I read the preliminary set of instructions to you, a question is not evidence unless and until it supplies answer – or a meaning to the answer that the witness may give. So we're asking you to unring the bell, so to speak, and counsel will be careful in the future inquiries in

11

this regard with respect to any other witnesses that he may be cross-examining or call in direct examination. But you are not to take any insinuation by that question or the answer that the witness started to give. Do not speculate what it would have pertained to or anything of that sort. Treat it as though you have never heard of it."

Defendant contends that Ha's nonresponsive answer, "in light of the prosecutor's earlier question concerning the commission of other crimes that defendant had committed for which he had not been arrested, was so prejudicial that the cautionary instruction given by the trial court was ineffective and defendant's conviction in this matter must be reversed." He urges that "the nonresponsive answer brought out a highly prejudicial and inadmissible fact of defendant's purported involvement in another murder." We disagree with defendant's analysis.

"Under ordinary circumstances the trial court is permitted to correct an error in admitting improper evidence by ordering it stricken from the record and admonishing the jury to disregard it, and the jury is presumed to obey the instruction. [Citations.] However, . . . 'It has also been held that in certain cases where the incompetent evidence goes to the main issue and where the proof of defendant's guilt is not clear and convincing, that the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence.' " (*People v. Hardy* (1948) 33 Cal.2d 52, 61, quoting *People v. McKelvey* (1927) 85 Cal.App. 769, 771.)

Here, the incompetent evidence was ambiguous. It did not, as defendant urges, implicate defendant in another murder; it simply revealed that the police asked Ha whether she knew "anything else about" defendant committing another murder. Moreover, the reference was brief and the import of the evidence did not go to the main issue whether defendant murdered Nguyen. And finally, proof of defendant's guilt was clear and convincing: there were two eyewitnesses, one of whom (Ha) admitted to being in love with defendant at one point; plus there were defendant's admissions to Ha and Tran. And defendant presented no defense; his case consisted of an attack on Ky

12

Nguyen's credibility. This case therefore falls within the ordinary where it can be presumed that a cautionary instruction cured the prejudicial impact of inadmissible evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In considering a claim of ineffective assistance of counsel, courts apply the standard set forth in *Strickland v. Washington* (1984) 466 U.S. 668. The defendant must first show that "counsel's representation fell below an objective standard of reasonableness. . . . [¶] . . . under prevailing professional norms." (*Id.* at p. 688.) The defendant must then establish prejudice. " 'Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.] The United States Supreme Court [has] explained that this second prong of the *Strickland* test is not solely one of outcome determination. Instead, the question is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' [Citation.]" (*In re Harris* (1993) 5 Cal.4th 813, 833.)

Defendant bears a burden that is difficult to carry on direct appeal. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) Our review is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington, supra*, 466 U.S. at p. 689.) A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. (*Strickland v. Washington, supra*, 466 U.S. at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.) The burden is to establish the claim not as a matter of speculation but as a matter of demonstrable reality. (*People v. Garrison* (1966) 246 Cal.App.2d 343, 356.) As to the failure to object in particular, "[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v.*

13

*Kelly* (1992) 1 Cal.4th 495, 540.)

" '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079, quoting *Strickland v. Washington, supra*, 466 U.S. at p. 697.)

Defendant complains about four asserted derelictions.

"First, trial counsel failed to raise a timely objection as to the inadmissibility of some testimony by Tina Ha that she believed that defendant was making money by illegal activities."

"Second, without proper preparation, defense counsel went into an area of inquiry on cross-examination of Tina Ha on the subject that a detective who interviewed her accused her of being a prostitute all of which caused Tina Ha to have a disastrous emotional breakdown in front of the jury."

"Third, defense counsel raised no objection to the testimony of the individual who was the probation officer who interviewed defendant for a presentence probation report in December 1994, during which defendant indicated that his address [was in San Jose] and further stated that he had lived full time in Santa Clara County for the previous six years."

"Fourth, defense counsel raised no objection to the prosecutor's statement in closing argument to the jury that in connection with the incident that happened at the Hoan My Restaurant in October 1998, 'We heard that a month earlier the defendant—the defendant had been involved in a violent attack on another customer in the restaurant one month earlier. You heard that the defendant and his two buddies dragged or took some guy into the bathroom, and there in the bathroom they struck this man over the head with a beer bottle, and the man was bleeding and so forth.' There was absolutely no evidence in the record to support this factual assertion."

14

Defendant, however, makes no reasoned argument as to the prejudice prong of an ineffective assistance claim. His entire argument as to prejudice consists of one sentence and is as follows: "Although there was other evidence pointing to defendant's guilt in this matter, all four deficiencies in question clearly point to a situation where counsel's deficient performance rendered the results of defendant's trial unreliable or otherwise caused the proceedings to be fundamentally unfair." This glosses over the overwhelming evidence of guilt. As we have pointed out, (1) two eyewitnesses identified defendant, and (2) defendant admitted his complicity to two people.

In any event, we cannot imagine how Ha's testimony and emotional demeanor, if they resulted from the deficient performance of defense counsel, rendered the result of the trial unreliable or the proceeding fundamentally unfair. Ha did not say that defendant was a criminal—she said that she believed defendant was making money by illegal activities; also, the jury knew that defendant was a felon given the evidence and verdict as to the felon-in-possession-of-a-firearm charge. We are not convinced that Ha's belief about defendant's collateral activities swayed the jury from focusing on the evidence in this case. Moreover, the record supports that Ha was emotionally fragile generally rather than as a consequence of supposed deficient cross-examination. The trial court observed as to Ha's so-called emotional breakdown, "She was on the verge of this before, earlier this morning, in any event."

Defendant similarly fails to demonstrate how the probation officer's testimony or the prosecutor's reference to Hoan My incident rendered the result of the trial unreliable or the proceeding fundamentally unfair. The probation officer's testimony about defendant's San Jose residences was not the only evidence on this point. The arrest records also impeached defendant. And defendant's involvement in an assault at the Hoan My Restaurant was already in evidence via the arrest records. The details, as revealed by the prosecutor's argument, add little impact to the existing evidence given the gruesome, undisputed details of the murder at issue.

15

We emphasize that it is defendant's burden to affirmatively show prejudice as a demonstrable reality. We conclude that defendant fails to carry his burden as to the prejudice prong. We therefore find it unnecessary to examine whether the asserted derelictions fell below an objective standard of reasonableness under prevailing professional norms.

## DISPOSITION

The judgment is affirmed.

16

# EXHIBIT COVER PAGE:

Exhibit:  B

Description of this exhibit: COURT OF APPEAL COURT'S ORDER MODIFYING
OPINION AND DENYING PETITION FOR REHEARING

Number of pages of this exhibit:  2  pages

JURISDICTION:  (Check only one)

_____Municipal Court

_XX_ Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

ORIGINAL

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

#### SIXTH APPELLATE DISTRICT

OCT 2 2 2002

Court of Appeal - Sixth App. Dist.
By_____
DEPUTY

| | |
|---|---|
| THE PEOPLE, | H021681 |
| | (Santa Clara County |
| Plaintiff and Respondent, | Super. Ct. No. C9927769) |
| v. | ORDER MODIFYING OPINION |
| | AND DENYING PETITION FOR |
| TAI QUOC DANG, | REHEARING |
| Defendant and Appellant. | |

THE COURT:

It is ordered that our decision filed September 24, 2002, be modified as follows:

On page four, first paragraph, line three, delete the sentence: "One of the records referred to defendant's involvement in an assault at the Hoan My Restaurant that occurred approximately one month before the murder."

On page 15, third paragraph, line six, delete the words "the arrest records" and insert the following words: "inference from Vo's testimony."

There is no change in judgment. Appellant's petition for rehearing is denied.

Dated: OCT 2 2 2002

_____
Premo, Acting P.J.

WE CONCUR:

_____
Elia, J.

_____
Wunderlich, J.

AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action: that my business address is 333 West Santa Clara Street, Suite 1060, San Jose, CA 95113; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal System from San Jose, CA 95113.

I certify under penalty of perjury that the foregoing is true and correct.

Michael J. Yerly, Clerk of the Court

_____          OCT 2 2 2002
Deputy Clerk                      Date

CASE NUMBER: H021681

Hon. James Chang
~~Office of the County Clerk~~              Material Sent YES: _____
Santa Clara County Superior Court
191 North First Street
San Jose, CA 95113

Amy Haddix                                 Material Sent YES: _____
Office Of The Attorney General
455 Golden Gate Avenue
Room 11000
San Francisco, CA 94102

Arthur Dudley                              Material Sent YES: _____
Page, Salisbury & Dudley
605 Center Street
Santa Cruz, CA 95060-3804

Sixth District Appellate Program           Material Sent YES: _____
100 No. Winchester Blvd.
Suite 310
Santa Clara, CA 95050

# EXHIBIT COVER PAGE:

**Exhibit:** _____C_____

**Description of this exhibit:** SUPREME COURT'S ORDER, DENYING REVIEW

**Number of pages of this exhibit:** ___1___ **pages**

**JURISDICTION:** (Check only one)

_____**Municipal Court**

__XX__ **Superior Court**

_____**Appellate Court**

_____**State Supreme Court**

_____**United States District Court**

_____**United States Circuit Court**

_____**United States Supreme Court**

_____**California Department of Corrections, 602 Exhibit.**

_____**Other:** _____

Court of Appeal, Sixth Appellate District - No. H021681
**S111093**

# IN THE SUPREME COURT OF CALIFORNIA

### ⸰ En Banc

---

THE PEOPLE, Plaintiff and Respondent,

**RECEIVED**

v.

DEC 1 6 2002

TAI QUOC DANG, Defendant and Appellant.

Court of Appeal - Sixth App. Dist.

By ⸺⸺⸺⸺⸺⸺⸺⸺⸺
DEPUTY

---

Petition for review DENIED.

**SUPREME COURT**
**FILED**

DEC 1 1 2002·

Frederick K. Ohlrich Clerk

⸺⸺⸺⸺⸺⸺⸺⸺⸺
DEPUTY

GEORGE,

⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺
Chief Justice

# EXHIBIT COVER PAGE:

Exhibit:  ___D_____

Description of this exhibit:DOCUMENTARY EVIDENCE IN SUPPORT OF EXPLANATION
FOR DELAY

Number of pages of this exhibit:  94   pages

JURISDICTION:  (Check only one)

_____Municipal Court

_XX_Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: _____

# Page, Salisbury & Dudley · Attorneys at Law

605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

Telephone (831) 429-9966
Facsimile (831) 427-2132

August 17, 2000

Tai Quoc Dang, P-83131
Deuel Vocational Institute
P. O. Box 6000
Tracy, California 95378

      RE:  <u>People v. Tai Quoc Dang</u>
           Court of Appeal, Sixth Appellate District
           Case Number H021681

Dear Mr. Dang:

     As you may well know I have been assigned by the Sixth
District Appellate Program to handle your appellate court
proceedings.  Enclosed you will find a short informational sheet
explaining the appellate process which has been put together by
the Sixth District Appellate Program.

     In addition to the enclosed information I will explain to
you at this time that the appellate process is considerably
slower than the trial court process that you are familiar with in
the Santa Clara County Superior Court.  One of the things that I
will need to review in your matter is a full and complete
appellate record that is going to be prepared by the Santa Clara
County Superior Court.  It has been my general experience that
once I have received the appellate record quite frequently it is
necessary for me to augment the record on appeal to include
transcripts of hearings conducted prior to one's trial.  Thus,
any information that you can provide me about hearings in your
matter prior to the trial can be very helpful when I prepare a
motion to augment the record on appeal.

     Next, you should know that I have been an attorney for about
27 years.  I graduated from law school in 1973, and for the first
five years as a lawyer, I was a staff attorney at the Court of
Appeal in Fresno, California.  Thereafter, since 1978, I have

COPY

Tai Quoc Dang, P-83131                   -2-            August 17, 2000
RE:  People v. Dang

been an attorney in Santa Cruz County doing both trial work and
appellate work, primarily in the area of criminal law.  I have
clients that hire me privately and clients to which I am
appointed by the court.  Regardless of how I come to represent a
client, I always fight hard for my client regardless of whether
the client is privately retained or court appointed.
Additionally, I have considerable experience with regard to
habeas corpus proceedings.

     Also, I am always interested in hearing what you think is
important in connection with your appeal.  This information will
assist me in determining whether or not there will be the need
for a collateral habeas corpus proceeding to be filed on your
behalf.

     Additionally, during your appeal we will be communicating
mostly in writing.  However, I have no objection whatsoever to
receiving collect telephone calls from you.  Generally, the best
time to reach me is in the late afternoon, preferably on a
Thursday or a Friday.  I look forward to hearing from you
concerning your thoughts about your appeal.  If you should have
any questions whatsoever or any comments, please do not hesitate
to set them out to me either in a letter or by way of a collect
telephone call.  I will do my best to answer your questions.

     Lastly, it is very important that I know your location
during your appeal.  In the event you relocate while your appeal
is pending, please advise me of your new address right away.

                              Very truly yours,


                              Arthur Dudley

AD/mcb
encls.

cc:  Sixth District Appellate Program

                              D(2)

# Page, Salisbury & Dudley . Attorneys at Law

**605 Center Street • Santa Cruz • California 95060-3804**

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

September 25, 2000

Clerk's Office-Felony Appeals
Santa Clara County Superior Court
191 North First Street
San Jose, CA 95113

> Re: People v. Tai Quoc Dang
> Santa Clara County Superior Court
> Case Number C9927769
> Court of Appeal, Sixth Appellate District
> Case Number H021681

Dear Sir/Madam:

I am the attorney representing defendant Tai Quoc Dang in connection with his appeal in the above-entitled action now pending in the Court of Appeal, Sixth Appellate District, Case Number H021681. This letter is being submitted to you pursuant to rule 35(e) of the California Rules of Court in light of the fact that there appears to be several omitted or missing matters with regard to the normal record on appeal. Specifically, the omitted or missing materials, which are specified hereinbelow, all relate to the clerk's transcript on appeal.

First, Exhibit 53 (parts 1, 2, 3 and 4) and Exhibit 61 are transcripts of tape recordings that were provided to the jury. Pursuant to rule 33(a)(1)(k) of the California Rules of Court, such matters (any transcript of any electronic sound recording that was provided to the jury or tendered to the court under rule 203.5 of the California Rules of Court) are part of the normal record on appeal.

Second, Exhibits 35, 36 and 37 are certified copies of court records that were used to prove a prior conviction or convictions. Pursuant to rule 33(a)(1)(n) of the California Rules of Court, such matters (i.e., any certified records of a court or of the Department of Corrections introduced in evidence to prove a prior conviction or prior prison term) are part of the normal record on appeal.

D(3)

Clerk's Office-Felony Appeals                    -2-                                    September 25, 2000
Re: People v. Dang

Please take the appropriate steps to rectify the normal record on appeal with regard to the above-designated omissions. Thank you for your anticipated prompt attention to this matter. If you have any questions whatsoever, please do not hesitate to contact me.

Very truly yours,

Arthur Dudley

AD/rf

cc:  Office of the Attorney General
     Court of Appeal, Sixth Appellate District
     The Sixth District Appellate Program
     Tai Quoc Dang

D(4)



# Page, Salisbury & Dudley • Attorneys at Law

### 605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

October 10, 2000

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, California 92233

     RE: <u>People v. Tai Quoc Dang</u>
          Court of Appeal, Sixth Appellate District
          Case Number H021681

Dear Mr. Dang:

As you can see from the enclosed motion to augment the record on appeal, I am still working on getting a full and complete record on appeal in your matter that will be necessary for raising the appropriate issues.

Also, I have received your letter and have reviewed it carefully. With regard to the letters from the female witness who said that you were innocent, I will ask your trial counsel to send those letters to me. Next, I would be very interested in receiving from you a copy of the letter that you got from Nhan Nguyen relating the events about the deal the prosecutor was trying to make with him before he testified at your trial. If you cannot make a copy of that letter, please send the original to me and I will make a copy and send the copy back to you.

With regard to the other matters concerning the fingerprint on the glass cup and the two unopened beer bottles, it will be necessary for me to read the full and complete record before I can really get into those matters with you. In this regard, I will ask your trial court attorney to send to me all of the police reports in your matter along with the tapes of the various statements taken from the people involved in your case, including the statement you made. Hopefully, with a copy of the tape of your statement, I will be able to get to the bottom of the translation problem that you mentioned in your letter.

D(5)

Tai Quoc Dang, P-83131                    -2-              October 10, 2000
RE:   People v. Dang

        In the meantime, if you have any questions, please do not
hesitate to write me.

                                        Very truly yours,


                                        Arthur Dudley

AD/rf
Encl.

cc:   Sixth District Appellate Program

# Page, Salisbury & Dudley . Attorneys at Law

### 605 Center Street . Santa Cruz . California 95060-3804



Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

December 28, 2000

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, CA 92233

> RE:    People v. Tai Quoc Dang
>        Court of Appeal, Sixth Appellate District
>        Case Number H021681

Dear Mr. Dang:

This is a quick letter to let you know that I am still
working on the appellant's opening brief in your appeal.  Also, I
have had the letter from Nhan Nguyen translated into English. I
find the information contained in that letter quite interesting.
After I have completed the appellant's opening brief in your
case, I will be able to put into proper prospective everything
indicated by Nhan Nguyen in his letter.  Obviously, at that time
I will have more questions for you.

Additionally, at the time you sent Nhan Nguyen's letter to
me, you indicated in your letter that you had a couple of more
alibi witnesses who could directly contradict the testimony of
the prosecutor's witnesses and prove that the prosecutor's
witnesses were lying.  If at all possible I would like to receive
from you the names and addresses of these other potential alibi
witnesses.  Also, if you could summarize for me the anticipated
testimony from these other alibi witnesses, that would be very
useful to me at this time.

D(7)

Tai Quoc Dang, P-83131                -2-             December 28, 2000
RE:  People v. Dang

     Additionally, I am still trying to obtain from your trial
court attorney the letter from the potential witness by the name
of Anh.  As soon as I get that letter, I will let you know.

     I look forward to hearing from you in the near future.

                         Very truly yours,

                         Arthur Dudley

AD/mcb
encls.

cc:  Sixth District Appellate Program

D(8)

# Page, Salisbury & Dudley . Attorneys at Law

605 Center Street . Santa Cruz . California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

January 25, 2001

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, CA 92233

RE:   People v. Tai Quoc Dang
      Court of Appeal, Sixth Appellate District
      Case Number H021681

Dear Mr. Dang:

As you can see from the enclosed application for an
additional extension of time to file the appellant's opening
brief in your appeal, I am currently involved in a multi-week
jury trial in the Santa Cruz County Superior Court. I anticipate
after the conclusion of that trial I will have a few weeks where
I have no significant matters set for trial in the superior
court. Accordingly, I will be able to use that time to finally
do the finishing work on your appellant's opening brief.

Also, I recently received the complete file your trial court
attorney had in your matter. It consists of a rather large box
of paperwork. As of this time I have not yet had an opportunity
to go through that file. As soon as I finish up with the above-
mentioned jury trial, I can spend some time reviewing everything
in the box your trial court attorney sent to me.

Also, I understand that your trial court attorney is
in possession of what I believe is to be a rather expensive watch
that belongs to you. Apparently, one of your family matters was
going to pick up that watch from your trial court attorney.

D(9)

COPY

Tai Quoc Dang, P-83131          -2-          January 25, 2001
RE:  People v. Dang

However, that never happened.  Your trial court attorney wanted
to know what he should do with the watch.  I suggested that the
watch could be sent to me and that I could hold it waiting for
your further directions.  If you are in agreement with having
your trial court attorney send the watch to me, please write me a
letter so indicating so that I can give something to your trial
court attorney authorizing the release of your watch to me.  If
you want to handle the disposition of the watch in some other
fashion, please let me know so that I can advise your trial court
attorney of the alternative disposition.

     I look forward to hearing from you in the near future.

                                    Very truly yours,


                                    Arthur Dudley

AD/mcb
encls.

cc:  Sixth District Appellate Program

D(10)

Tai Quoc Dang  P-83131
P.O. Box 5002/A2-102
Calipatria, CA 92233-5002

February 5, 2001

Page, Salisbury & Dudley
Arthur Dudley, Attorney at Law
605 Center Street
Santa Cruz, CA 95060-3804


Dear Mr. Dudley:

I am in receipt of your letter of January 25, 2001, wherein you
offer to hold my watch pending my further instructions.  You are
quite right, it is a rather expensive watch.  It is an Omega, which
costs me several thousand dollars.

I would very much  appreciate it if you would take temporary
possession of my watch for me.

With this letter, I authorize you to take temporary possession of
my watch from Mr. Rios, my former trial attorney.  However, I am
concerned how Mr. Rios will transfer possession of the watch to
you.  Will you pick it up from him directly, or will he drop it
off to you?  If he decides to ship it to you, please make sure it
is insured.  If either you or Mr. Rios require reimbursement for
the safe transport of my watch, please let me know.

Thank you for your assistance, Mr. Dudley.  Please let me know when
you take possession of my watch.  I will give you further instructions
concerning what I want done with the watch in the near future.

Sincerely,

Tai Quoc Dang

cc:   file


D(11)

TO:

    MR - DUDLEY
ATTORNEY AT LAW
605 CENTER STREET
SANTA CRUZ - CA - 95060 - 3804

FROM: TAI GANG/#P-83131
    A2- 102
    CALIPATRIA STATE PRISON
    P.O. BOX 5002
    Calipatria, California 92233-5002

MARCH 19th, 2001

Dear Mr. Dudley,

IN RE: TAI DANG ON DIRECT APPEAL FROM THE JUDGMENT OF THE SUPERIOR COURT
    CASE No. H 021681 ,    2 CRIM. C 99277C9 ]

___ Briefly, by now you should be in receipt of my previous letter dated on
or about March 15th, 2001. As I have stated to you about forwarding relevant
information as I research it, and recall it! However I cannot do that effect-
-ively without the record on appeal in my possession also.

Therefore I am hereby requesting that you send me a copy of the full re-
cord on appeal including the police reports, any and all statements made by
witnesses to investigators' outside of the record. Let me know the costs for
copies, and postage handling included ASAP.

Again I'm asking you to use the power of the court if necessary to make
my trial PD send me my letters immediately. He is already in contempt of the
court's order.

Thank you in advance upon reply.

Very Truly Yuors,

Tai Dang (Client)

D(12)

# Page, Salisbury & Dudley · Attorneys at Law

### 605 Center Street · Santa Cruz · California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

March 29, 2001

Tai Quoc Dang, P-83131
Calipatria State Prison
P. Q. Box 5002
Calipatria, CA 92233

    RE:   People v. Tai Quoc Dang
           Court of Appeal, Sixth Appellate District
           Case Number H021681

Dear Mr. Dang:

    I received your two letters recently, and do not worry I do
appreciate your thoughts and ideas. As you can see from my most
recent request for an extension of time to file the appellant's
opening brief in your matter, I have been involved in a number of
trial court matters, and other appellate matters, which is
slowing down the full completion of your opening brief.

    With regard to your request for a full and complete copy of
the appellate record, I need to indicate to you that there is
almost 2,200 pages in the full record, and the State of
California only gives us one copy. Additionally, the State of
California will not reimburse me for a photocopy of the full and
complete record for you. Thus, when I have a client, such as
yourself, who would like to have a full and complete copy of the
appellate record while I am working on the case, it is necessary
for either the client, or friends and family members of the
client, to come up with the necessary funds to have the record
copied and mailed to the client. Due to the length of the record
in your matter, I anticipate that copying and mailing costs would
be in the neighborhood of approximately $250. If this can be
arranged, I will take all necessary steps to get a full and
complete copy of the transcript to you as soon as reasonably
possible.

Tai Quoc Dang, P-83131              -2-              March 29, 2001
RE:   People v. Dang

COPY

        In the meantime, as I indicated earlier in this letter, I
appreciate your ideas and input.   I look forward to hearing from
you.

                                        Very truly yours,


                                        Arthur Dudley

AD/mcb

cc:   Sixth District Appellate Program



# Page, Salisbury & Dudley • Attorneys at Law

605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Nikki Whitehead
Matthew A. Mohun

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

May 14, 2001

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, CA 92233

     RE:  People v. Tai Quoc Dang
          Court of Appeal, Sixth Appellate District
          Case Number H021681

Dear Mr. Dang:

    By the time you receive this letter, hopefully you have already received the copy of the appellant's opening brief that I have prepared and filed in connection with your appeal.

    As you can see from the appellant's opening brief, one of the major problems in your case appeared to me to be the fact that a lot of highly prejudicial evidence got before the jury concerning your past record and other previous criminal acts in which you may have been involved. With regard to some of this evidence, it appears that your trial court attorney may not have made the most specific objections possible to that evidence. This is particularly true with regard to the matters that I discuss in issue number 1 starting on page 9 of the appellant's opening brief. These matters relate to the issue that the prosecutor could not properly impeach your out-of-court statement with other types of evidence reflecting inconsistencies with that prior out-of-court statement. The matters also include the argument that it really was not necessary for the prosecutor to impeach the credibility of your out-of-court statement with other evidence of prior addresses that you had in San Jose which encompassed facts of alleged prior crimes committed by yourself.

D(15)

COPY

Tai Quoc Dang, P-83131          -2-          May 14, 2001
RE: <u>People v. Dang</u>

Also, I have had an opportunity to review in full the transcript of the statement that you gave to the authorities which was admitted into evidence at your trial. It appears that there are, a number of things in that transcript which should have been edited out before the jury ever saw it. These matters include, the opinions of the detectives that you committed the homicide in this matter, along with statements by the detectives indicating your prior criminal record and the events that occurred at the restaurant about a month prior to the homicide in this case where you and some other people allegedly attacked a customer at the restaurant. However, your trial court attorney never objected to the inadmissibility of any of these matters.

My next step in connection with your appeal, is to file a petition for writ of habeas corpus alleging that you received ineffective assistance at trial due to your trial counsel's failure to raise proper objections to the matters that I have just discussed hereinabove. In the near future I will be preparing a letter to send to your trial counsel detailing the various matters with regard to which I believe proper objections should have been made in order to protect your interests at trial. I will be asking your trial counsel to explain to me why he did not raise these proper objections. Thereafter, whether or not your trial counsel responds to my letter, I will then prepare the necessary petition for writ of habeas corpus asking that it be joined with your appeal so that all of these issues can be considered at one time regardless of the fact that your trial court attorney failed to raise the proper objections in the trial court.

I apologize if the matters I have discussed hereinabove seem to be rather complicated. However, I am trying to give you an explanation as to what some of the next steps will be in connection with the appellate process in your matter. As I have explained to you in the past, I do both trial and appellate work. Based upon my trial court experience, I am rather disappointed that your trial court attorney failed to raise what appears to be proper and meritorious objections to the inadmissibility of the evidence of your prior criminal acts which had no relevant purpose in connection with your trial on the San Jose murder charge.

D(16)

Tai Quoc Dang, P-83131          -3-          May 14, 2001
RE: <u>People v. Dang</u>

The next step in connection with the actual appeal in your matter is, for the Attorney General's Office of the State of California to file a respondent's brief answering the issues that I have raised in the appellant's opening brief. Due to the length of the record, and the complexity of the issues that I have raised, I anticipate that it will be at least three to four months from now when I receive the respondent's brief. As soon as I have a copy of that brief, I will send a copy on to you. After the filing of the respondent's brief, I have the opportunity to file an appellant's reply brief. In the meantime, I will be working on the petition for writ of habeas corpus relating to the matters that I have set forth earlier in this letter.

Finally, with regard to photocopying the complete transcript for you, I recently have talked to Chanel who has indicated that she will be sending to me in the near future the necessary sum of money to get the transcript photocopied for you and then mailed to you. In the meantime, if you have any questions please do not hesitate to write me.

Very truly yours,

Arthur Dudley

AD/mcb

cc: Sixth District Appellate Program

TO: Mr. Dudley
    attorney at law
    605 Center Street
    Santa Cruz, California 95060-
    3804

                              MAY 17th, 2001


Dear: Mr. Dudley,


      I just received a copy of my opening brief last night. I
immediately wrote you back a few words of my reply.
      How are you doing? I hope you are doing good. As for me I'm
doing just fine.
      I went through the opening brief transcripts, I noticed that
prosecution witnesses Ky_Nguyen and Phap_Le were not included in
this opening brief.
      It is to my understanding and your's that these witnesses
play a major part within my defense.
      Why I say this to you is simple and plane that I should not
even explain why it is. You and I both know that this opening brief
is not complete. Why I say this is because a total of 5 witnesses
testified against me. In my opening brief, you just mentioned only
3 witnesses. I. E (Loc_Vo, Linda_Tran, Tina_Ha.) How about Ky_
Nguyen and Phap_Le.
      Ky_Nguyen is a key witness, and the first witnesses to testify
against me. If you don't bring them up this could be very damaging
to my defense.
      I do not know if this tatic is to my benifit and I also do not
know if this is an error on your part.
      I do understand with utmost respect that you have other cases
and a job to do.
      I want you to clearly understand that I'm not trying to under-
mine your professional abilities, It's just that I understand that
you are helping me, and I feel so inadequate. So allow me to feel a
sense of self worth, by forwarding relevant information to bring up
a complete opening brief. I.E (Witness Ky_Nguyen and Phap_Le.)
      Please take in consideration that I'm here for 53 years to life
because of prosecution's witnesses proclaiming that they witnessed
me committing this horrible crime.
      I ask you, please go back to the police report statement that
Ky_Nguyen and Phap_Le made. They were not consistent with the pre-
liminary hearing transcripts and with the trial transcripts. From
the statement, to preliminary hearing and trial should prove with-
out a doubt that they are lying.
      Ky_Nguyen and Phap_Le contradicted their own statement and tes-
timony under oath. The only relevant statement that I can see is
that they both saw me at the scene of the crime.
      While both Ky_Nguyen and Phap_Le supposedly were together drin-
king and socializing at the same table and same surroundings but
(you tell me) why these two witnesses have different stories. It
sure looks like that they are talking about 2 different people.

What more could I say and do but to ask you for help. Please send a complete opening brief.

As to another matter, whatever became of Mr. Nhan_Nguyen's letter. This is also important to my defense that you should investigate this witness.

Why should the prosecutor use my girlfriend and strangers I don't even know to testify against me, and not Mr. Nhan_Nguyen also. They sure went through alot.

Above and under they went to find witnesses to testify against me. It's peculiar that they would not use Mr. Nhan_Nguyen's statement and testimony. It is plane proof within your possession that Mr. Nhan_Nguyen's letter states that I'm not the one who comitted this crime. Why I say this is because he was there the night that the police got a statement from him. It is very vital that you subpoena Mr. Nhan_Nguyen in my defense.

Thank you in advance upon reply.

Very Truly Yours,

TAI QUOC DANG/#
CALIPATRIA STATE PRISON
A2-102L
P. O. BOX 5002
CALIPATRIA, CALIFORNIA 92233-5002

# Page, Salisbury & Dudley . Attorneys at Law

### 605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Christy Conroy-Lucio
Vilma L. Guerrero

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

May 23, 2001

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, CA 92233-5002

      RE: <u>People v. Tai Quoc Dang</u>
         Court of Appeal, Sixth Appellate District
         Case Number H021681

Dear Mr. Dang:

    I am in receipt of your letter of May 17, 2001, concerning your inquiries about the various inconsistent statements given by witness Ky Nguyen and also statements made by Phap Le. I hope what follows will assist you in understanding the true function of an appellate court in connection with a direct appeal.

    You need to understand that the appellate court procedure with regard to the record on appeal is considerably different than how a jury considers the facts at trial. Appellate courts do not reweigh the evidence and redetermine the issue of guilt or innocence. (<u>People v. Culver</u> (1973) 10 Cal.3d 542, 548; <u>People v. Pitts</u> (1990) 223 Cal.App.3d 606, 884.) Issues concerning the credibility of witnesses and the weight to be accorded to the testimony of witnesses are matters exclusively within the province of the jury. (<u>People v. Stewart</u> (2000) 77 Cal.App.4th 785, 790; <u>People v. McCloud</u> (1997) 55 Cal.App.4th 1205, 1221.) In other words, the appellate court must give due deference to the jury's determination of the credibility of witnesses and cannot substitute its evaluation of a witness' credibility for that of the jury. (<u>People v. Jones</u> (1990) 51 Cal.3d 294, 314; <u>People v. Barnes</u> (1986) 42 Cal.3d 284, 303-304.)

    In short, when the facts of a conviction are looked at by the appellate court, the appellate court is guided by what is called the "substantial evidence" rule. Pursuant to the substantial evidence rule, the appellate court must view the evidence in a light most favorable to the prosecution and presume in support of the judgment the existence of every fact that the jury could

Tai Quoc Dang, P-83131                    -2-                    May 23, 2001
RE: People v. Dang

reasonably deduce from the evidence. (People v. Johnson (1980) 26 Cal.3d 557, 576;
People v. Mosher (1969) 1 Cal.3d 379, 395.) Also, pursuant to the substantial evidence rule,
conflicts in the evidence, and conflicts between a witness' courtroom testimony and any prior
inconsistent statements, cannot be reweighed by the appellate court. In short, an appellate court
does not review all of the testimony and make its own independent decision as to whether or not
the evidence proves guilt beyond a reasonable doubt. (People v. Johnson, supra, 26 Cal.3d 557,
576.)

As a result of the above principles, which are standard rules of appellate practice, matters
concerning the conflicts in the testimony of Ky Nguyen, with regard to prior statements he made,
are not matters for the appellate court to reweigh and reconsider at this time. Also, Phap Le was
never called as a witness at your trial. Accordingly, that is why the statement of the facts written
in the appellant's opening brief was written in the way that it was written. Again, when an
appellate court reviews the record on appeal it does not reweigh the facts to determine the
credibility of witnesses, and it does not reweigh the facts to make its own determination of proof
of guilt beyond a reasonable doubt. The evidence must be viewed in a light most favorable to the
prosecution.

With regard to the letter from Nhan Nguyen, it is important to understand that, similar to
Phap Le, he was not called as a witness at your trial. The proper way to raise any issue in this
regard is whether your trial counsel was ineffective for failing to present Nhan Nguyen's
testimony at trial. As I explained to you in my last letter, there are a number of matters
concerning your trial counsel's failures that I will be addressing to him in a letter which ultimately
will be the basis for a habeas corpus petition. In that letter I will address the issue of his failure to
present Nhan Nguyen's favorable testimony at your trial. Since everything concerning Nhan
Nguyen's letter is outside the record on appeal, the only way that it can be properly presented to
the Court of Appeal is through an appropriate petition for writ of habeas corpus, and not in an
appellant's opening brief which is strictly limited to the actual record on appeal. This is also true
with regard to Phap Le's statements to the police.

I apologize that if some of the above principles and rules seem overly technical. However,
that is something that appellate attorneys must deal with in every appellate case. I appreciate your
input with regard to the matters you mention in your letter of May 17, 2001. I hope this letter has
helped to explain the proper prospective in which issues on appeal need to be raised and
considered by the appellate court. If you have any additional issues, such as the one involving
Nhan Nguyen's letter, that is dependent upon matters outside the record on appeal, please

D(21)

Tai Quoc Dang, P-83131                    -3-
RE: People v. Dang



feel free to write me so that I can consider placing those issues in an appropriate petition for writ of habeas corpus.

Very truly yours,

Arthur Dudley

AD/mcb

cc: Sixth District Appellate Program

# Page, Salisbury & Dudley . Attorneys at Law

605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Nikki Whitehead
Matthew A. Mohun

Telephone (831) 429-9966
Facsimile (831) 427-2132

July 11, 2001

Javier Rios
Deputy Public Defender
Santa Clara County Public Defender's Office
120 West Mission Street
San Jose, CA 95110

RE: People v. Tai Quoc Dang
    Court of Appeal, Sixth Appellate District
    Case Number H021681

Dear Mr. Rios:

As you know, I am the attorney representing Tai Dang in his pending appeal. After reviewing the record in Tai Dang's case, I have come across a number of areas that concern me as to why you, as trial counsel for Tai Dang, did not raise certain objections in a proper and timely manner, and as to why you took certain courses of action that appear to have been more detrimental, than useful, to your client.

Initially, it is quite clear that one of the tactics the prosecution used in Tai Dang's case first was to present to the jury the statement Tai Dang gave to the authorities shortly after his arrest in Sacramento, where he stated that he never had been to the San Jose area, including the Hoan My Restaurant, and then, under the guise of "impeachment," attempt to prove to the jury that in fact Tai Dang had regularly been in the San Jose area for a number of years preceding the shooting at the Hoan My Restaurant. The above purpose of this tactic was to show evidence of a consciousness of guilt on the part of Tai Dang in making false statements to the authorities shortly after his arrest.

However, what concerns me is that there is a line of case authority in this state which holds that in situations where the maker of an out-of-court statement does not testify at trial, it is improper for the proponent of the out-of-court statement (in this case the prosecution who put into evidence Tai Dang's out-of-court statement) to impeach the contents of that statement whether the out-of-court statement is made by a defendant or by someone who is not a party to

D(23)

Javier Rios, Esq.                              -2-                              July 11, 200?
RE: People v. Dang

the proceedings. In other words, under circumstances where the maker of the out-of-court statement does not testify, there is authority that impeachment of such an out-of-court statement can only be done by the party against whom the statement is being used, and not by the actual proponent of the statement. (See People v. Bevea (1974) 38 Cal.App.3d 176, 192-193; see also Evid. Code,, § 1202; People v. Jacobs (2000) 78 Cal.App.4th 1444, 1449-1452; People v. Ross (1979) 92 Cal.App.3d 391, 406; People v. Marquez (1979) 88 Cal.App.3d 993, 997.) In light of this precedent, I would like to know why you did not raise a proper and timely objection to the prosecution's presentation of any and all evidence "impeaching" Tai Dang's out-of-court statement to the authorities, including the prosecution's use of the "impeaching" evidence indicating that Tai Dang had previous "police contacts" in the San Jose area.

Next, in connection with the "impeaching" evidence of Tai Dang's prior "police contacts" in the San Jose area, I am considerably baffled by your lack of any significant objection that all of this evidence violated fundamental principles contained in section 1101 of the Evidence Code, which strictly limits the use of evidence of other "bad acts." Obviously, as evidence of consciousness of guilt, the prosecution in Tai Dang's case wanted to show the jury that Tai Dang had lied to the authorities in his statement when he said that he never had been to the San Jose area. The evidence the prosecution used to demonstrate that point was all of the evidence of Tai Dang's prior "police contacts" in the San Jose area. Although this evidence at times at trial was merely referred to as prior "police contacts," in reality the evidence actually involved prior arrests. However, there are a number of ways to prove that someone lived in a particular area other than by the use of highly prejudicial evidence of prior "police contacts" in that area. For example, a person's previous addresses can be proved by records from the Department of Motor Vehicles with regard to drivers' licenses and vehicle registrations, records from a telephone company, rental agreements with landlords, observations of neighbors, tax forms such as employee withholding information, bank records with regard to checking and savings accounts, and post office records. Instead of using such benign matters to prove that Tai Dang had been living in the San Jose area for a number of years, the prosecution in this case jumped immediately to the use of the highly prejudicial evidence of prior "police contacts" that Tai Dang had in the San Jose area. Pursuant to principles developed under section 1101 of the Evidence Code concerning the exclusion of evidence encompassing other "bad acts" committed by a defendant, a rule of "necessity" has been developed. In other words, if the evidence in issue is merely cumulative with respect to other evidence which the prosecution may use to prove the same issue, it is excluded under a rule of necessity. (People v. Thompson (1980) 27 Cal.3d 303, 318; People v. Schader (1969) 71 Cal.2d 761, 774-775.)

In this case, it appears that you never raised any objection prohibiting the prosecution from using the evidence of Tai Dang's prior "police contacts," absent a showing by the



Javier Rios, Esq.                          -3-
RE: <u>People v. Dang</u>

prosecution that it was absolutely "necessary" for the prosecution to use that type of evidence to impeach Tai Dang's statements that he never had been in the San Jose area. In other words, before the prosecution was allowed to use the evidence of the prior "police contacts" to impeach Tai Dang's statements, the prosecution should have been required to prove to the court that the fact that Tai Dang had previously lived in the San Jose area could not be shown by any evidence except for the evidence of the prior "police contacts." I would like to know if you had any reason for not raising a proper "necessity" objection to the evidence in question.

Additionally, it is quite apparent that the reason the prosecution wanted Tai Dang to display his tatoos in front of the jury was to help prove that the Tai Dang in the courtroom was the same Tai Dang who had been involved in the "police contacts" in Santa Clara County that were documented in the various exhibits submitted to the jury. However, as just discussed hereinabove, these prior "police contacts" should have been inadmissible had a proper "necessity" objection been asserted. Thus, it would have been totally unnecessary for the prosecutor to have Tai Dang display in open court the tatoos on his body. In turn, the obvious collateral prejudicial impact of those tatoos, over and above the asserted claim by the prosecutor of their relevancy with regard to their proving the prior "police contacts" in Santa Clara County involving Tai Dang, would have been totally alleviated. Again, I would like to know if you had any reason for not raising a proper "necessity" objection to all of the evidence in question so as to require the prosecution to prove Tai Dang's prior contacts in Santa Clara County by more neutral evidence than the prior "police contacts" discussed hereinabove.

While on the subject of the evidence of the prior "police contacts," there is another problem area in connection with the transcript of Tai Dang's statement which was admitted into evidence at trial. While the documentary evidence admitted at trial concerning the prior "police contacts," was somewhat edited in an attempt to refer to those matters merely as "police contacts" and not arrests, nothing in that regard was edited or omitted from the transcript of Tai Dang's statement. In that transcript, as you well know, the authorities confronted Tai Dang with his prior contacts with the San Jose area, including the number of arrests he had in that area. However, in the transcript, those contacts were not edited to refer to them euphemistically as "police contacts." Throughout the transcript they were referred to as arrests. It is fundamental that although the prosecution typically wants to use the entire conversation of a defendant as evidence, defense counsel needs to move to redact the tape and/or the transcript to the bare bones of the defendant's admissible statements so that it does not contain other inadmissible evidence. (See 2 Cal. Criminal Defense Practice (2001) Confessions & Admissions, § 30.04[1][b], p. 30-18.) The question I have is if you took the time to get the applicable documentary evidence

Javier Rios, Esq.                                   -4-
RE: People v. Dang

edited so that prior arrests were only referred to as "police contacts," why did you not take the time to raise the proper objections to edit the transcript of Tai Dang's statement so as to eliminate any reference to the contacts in question as "arrests."

The above lack of editing with regard to the subject of prior arrests contained in the transcript of Tai Dang's statement leads to a bigger issue with regard to other aspects of an apparent failure on your part to do, or otherwise obtain by proper objection, a much fuller and complete editing of inadmissible and inappropriate matters contained in the transcript of Tai Dang's statement. For example, as in this case, tapes and transcripts of a defendant's statement can include inadmissible statements by the interrogating officer and hearsay. (See People v. Sanders (1977) 75 Cal.App.3d 501, 507-508 (the admission of a 36 page transcript was prejudicial since the transcript contained the officer's narrative statement of facts, double hearsay, and statements that enabled the prosecution to rehabilitate witnesses in an impermissible fashion).) Also, a common interrogation technique is for the officer to state unequivocally that he or she "knows" the defendant is guilty, or other similar statements, which are matters that an officer cannot testify to at trial. (See People v. Melton (1988) 44 Cal.3d 713, 744; People v. Smith (1989) 214 Cal.App.3d 904, 915; People v. Sergill (1982) 138 Cal.App.3d 34, 38-40.)

In this matter, the transcript of Tai Dang's statement is replete with numerous examples of inappropriate and inadmissible material which should have been deleted before ever being presented to the jury. However, it does not appear that you made any timely and appropriate objections to delete all of this irrelevant, prejudicial and inadmissible material from the transcript of Tai Dang's statement. Examples of these matters are as follows:

1.  We know you were in the restaurant on the night it happened without a doubt;
2.  You have been booked, fingerprinted and arrested before in the San Jose area;
3.  People do certain things with their body when they are lying, and I see you are doing something with your eyes that tells me you are lying;
4.  You were in a fight at the Hoan My Restaurant a month before when a bottle was broken over the head of a guy in the bathroom of the restaurant for which you were arrested too;
5.  Lots of people are helping us, you were going around thinking you were a big shot, you burned a lot of people in San Jose and they are not happy with you;
6.  We are pretty sure that more than one person was involved in the shooting at the restaurant;

D(26)



Javier Rios, Esq.                                   -5-
RE: People v. Dang

7.    We are pretty sure you are the one who is going to take the fall;
8.    You are the one everyone is pointing their fingers at;
9.    We know you were there, and that there are other people at the restaurant who
      know what happened;
10.   You burned too many people in San Jose, you upset a lot of people, you were
      cocky, you were a bully and you walked around thinking you were a tough guy;
11.   You ran around picking fights, and everybody told me that, and you were trying
      to make a name for yourself and trying to be a big shot;
12.   At the restaurant, people were not paying for dope, not paying gambling debts
      and taking away some of your business, I am very well aware that you know that;
13.   We told the Sacramento police that if you were in their town you were up to no
      good because that is what everybody told us in San Jose;
14.   You pissed off so many people in San Jose you had to get out of town;
15.   People in San Jose said you are dangerous;
16.   Some of the people who said it was you have nothing to do with the restaurant or
      the Vietnamese community in San Jose;
17.   We have plenty of evidence, lots of evidence, and we have solved the puzzle;
18.   You went to the restaurant so often people knew you, and there is gambling,
      prostitution and dope dealing at the restaurant;
19.   People said that the guy who got arrested a couple of weeks ago is the guy who
      did it;
20.   They told us you did certain things and that you were there;
21.   Did he try to move into your territory, was he cutting into your prostitution stuff;
22.   Everybody describes you as a gangster;
23.   We have witnesses who say you were there and did certain things;
24.   I see it in your eyes, as much as you want to lie to me about it, I see it in your
      eyes; and
25.   We know you were in San Jose, we know you have been in San Jose, and we
      know you committed this murder, we can and will prove that you did it.

I need to know any reason or reasons you had for not attempting to have all of the above
matters deleted and redacted from Tai Dang's statement so that the jury would not hear those
matters.

Next, you raised no objection to the prosecutor's statement in closing argument to the
jury that in connection with the incident that happened at the Hoan My Restaurant in October
1998, "We heard that a month earlier the defendant - - the defendant had been involved in a

D(27)

COPY

Javier Rios, Esq.                              -6-                                    July 11, 2001
RE: People v. Dang

violent attack on another customer in the restaurant one month earlier. You heard that the
defendant and his two buddies dragged or took some guy into the bathroom, and there in the
bathroom they struck this man over the head with a beer bottle, and the man was bleeding and so
forth."

      In connection with this statement made by the prosecutor in closing argument, there was
absolutely no evidence in the record to support this factual assertion. The only time the subject
came up as to what purportedly occurred at the earlier incident in the restaurant in October 1998,
and how Tai Dang was allegedly involved, was when the detectives were conducting their tape
recorded interrogation of Tai Dang in Sacramento, and the detectives were making factual
assertions about that earlier incident all of which were denied by Tai Dang. Obviously, these
assertions by the detectives, which were denied by Tai Dang, and which were never otherwise
proven by competent evidence at trial, are not evidence of the alleged asserted fact. Thus, with
regard to the prosecutor's statement in closing argument concerning what happened at the earlier
incident at the Hoan My Restaurant, there is no factual basis for that argument in the record.
Had a proper and timely objection been made with regard to this argument, it clearly would have
been sustained. Obviously, this argument of a prior brutal attack by Tai Dang was highly
inflammatory and prejudicial. I need to know why there was a total failure on your part to object
to this argument by the prosecution.

      Furthermore, as indicated hereinabove, in connection with what the authorities were
telling Tai Dang during the interrogation in Sacramento, it was claimed by the authorities that
Tai Dang was arrested in connection with the prior incident in the Hoan My Restaurant
concerning the attack on the individual with a beer bottle. Also, both the authorities in that
interview, and the prosecutor in oral argument to the jury, clearly indicated that Tai Dang
actually hit the victim over the head with a beer bottle. However, based upon the police reports
of that incident, Tai Dang never hit anybody with anything, and he was not arrested, but merely
was detained and released. If you had some tactical reason for not objecting to the statements
about the events concerning the prior incident at the Hoan My Restaurant, then I need to know
why you allowed a distorted version of that incident to be suggested to the jury which indicated
that Tai Dang hit the victim over the head with a beer bottle and was arrested for that incident.

      Next, you raised no objection to the testimony of the individual who was the probation
officer who interviewed Tai Dang for a presentence probation report in December 1994, during
which Tai Dang indicated that his address was 1302 Sippola Way, San Jose, California, and
further stated that he had lived full time in Santa Clara County for the previous six years. There

COPY

Javier Rios, Esq.                                  -7-
RE: People v. Dang

appears to be pertinent case authority which says that this testimony would have been totally inadmissible. (See People v. Pacchioli (1992) 9 Cal.App.4th 1331, 1382-1342, which held that statements made to a probation officer during an interview for a presentence probation report cannot be used in the prosecution's case in chief, but would be admissible for impeachment purposes if the defendant chose to testify at trial and the defendant's trial testimony conflicted with the earlier statements.) In the instant case, it appears obvious that this rule would be applicable since Tai Dang did not testify at trial. Accordingly, with a proper and timely objection, all of the testimony of the probation officer concerning what Tai Dang said during the earlier interview in connection with the preparation of the earlier presentence probation report would have been inadmissible. I need to know why you failed to raise such an objection to the testimony of the probation officer in question.

Furthermore, it appears that you failed to raise a timely and proper objection as to the inadmissibility of some testimony by Tina Ha that she believed that Tai Dang was making money by illegal activities. In this regard, on your cross-examination of Tina Ha, it was established that when Tai Dang was arrested he owned three gold bars which were worth about $300.00 a piece, and after Tai Dang's arrest those gold bars came into the possession of Tina Ha. On redirect examination of Tina Ha, the prosecutor at one point asked Tina Ha if she believed that Tai Dang got the gold bars through illegal activity. When you objected to that question on the grounds of speculation, the prosecutor momentarily dropped that line of questioning and proceeded to establish that just a couple of months before the commencement of the jury trial in Tai Dang's case, Tina Ha gave the gold bars in question to Tai Dang's mother who sold them for about $900.00. Then, the prosecutor proceeded to ask Tina Ha the question, ". . . do you suspect or do you believe he [Tai Dang] got those gold bars through illegal activity?" At that point you posed no objection, and Tina Ha responded by saying, "I believe so." The prosecutor then followed up with the question, "Do you believe that during the time that you were dating Tai Dang, from November 21st until . . . April 22nd, do you believe that Tai Dang was involved in illegal activities to support himself." At that point you finally interposed objections of "vague, also 352."

A discussion at sidebar then ensued between the court and, both yourself and the prosecutor, where your objections were discussed and you moved to strike the answer to the preceding question where Tina Ha said that she believed that Tai Dang got the gold bars through illegal activity. The trial court sustained your "352" objection to the current question which was asking Tina Ha if she believed that while she was dating Tai Dang that he was involved in illegal activities to support himself. However, the trial court denied the motion to strike the answer to the preceding question since there had been no specific objection made to that question when it

Javier Rios, Esq.                                    -8-
RE: People v. Dang



actually was asked. I need to know why you failed to raise a timely and proper objection to that preceding question which allowed Tina Ha to say, "I believe so" to the inquiry as to whether she suspected or, believed Tai Dang got his gold bars through illegal activity.

Additionally, I need to know why you went into an area of inquiry on cross-examination of Tina Ha on the subject that a detective who had interviewed her had accused her of being a prostitute. It appears that as part of your attempt to establish that the detective interviewing Tina Ha used coercive tactics to have her change her early statements in the interview that she did not know who did the shooting to a statement that identified Tai Dang as the shooter, you asked Tina Ha whether the detective who interviewed her accused her of being a prostitute. At that point the prosecutor asked to approach the bench with yourself.

During the ensuing sidebar discussion that occurred between the trial court, and both you and the prosecutor, you explained that your purpose for going into the accusation of Tina Ha being a prostitute was a means of showing that the detective interviewing Tina Ha was being heavy-handed with her. In substance, the prosecutor then explained that if you proceeded with that line of questioning, the prosecutor was prepared to show that Tai Dang really was a pimp and thus the detective interviewing Tina Ha was merely asking a legitimate investigative question and was not trying to be intimidating or coercive by asking the question to Tina Ha if she were a prostitute. The prosecutor represented to the court that the prosecution had actual women who could testify that Tai Dang was a pimp. The prosecutor explained that the prosecution had substantial evidence from Sacramento that the way Tai Dang was getting his money while in Sacramento was the fact that he was acting as a pimp. The prosecutor further explained that there were two prostitutes from Sacramento who were interviewed and who would come to court to testify to the fact that Tai Dang was a pimp. The prosecutor emphasized that the prosecution could in fact prove that Tai Dang was a pimp. You then said, "I'd ask for the discovery immediately," "I'd need the telephone numbers," and "[a]ll I'll need is the rest of discovery." The prosecutor then replied, ". . . counsel probably doesn't realize it, but he has the tapes of these witnesses. He has their tapes and their statements. They're the women who were interviewed that put money on your client's books. You have their statements." You then responded by saying, "I haven't listened to them."

Shortly thereafter, you indicated that you were withdrawing your line of questioning in reference to the subject of Tina Ha being asked, by the detective who was interviewing her,. whether she was a prostitute. In the meantime, as the prosecutor noted on the record, Tina Ha, who was sitting on the witness stand as all of the above-described sidebar discussion was



Javier Rios, Esq.                                    -9-
RE: <u>People v. Dang</u>

occurring, was sobbing on the witness stand and was in tears on the witness stand, and had been
so for some minutes. Obviously, all of this emotional breakdown by Tina Ha occurred in front
of the jury.

It appears quite apparent that if you had prepared for this case properly by listening to all
of the tape recorded statements, including the taped interviews of the two prostitutes from
Sacramento, you would have had a basis for knowing why the detective asked Tina Ha about
being a prostitute and you would not have gone into that subject matter on your cross-
examination of Tina Ha in front of the jury. The record is quite clear on this point since once
you were advised of the full ramifications of the prosecution's evidence as to why the detective
asked Tina Ha if she were a prostitute (i.e., primarily the taped interviews of the two prostitutes
that you admitted you had not listened to), you withdrew that line of questioning about the
detective accusing Tina Ha of being a prostitute. I need to know from you why you went into
this line of questioning, particularly when you had never listened to the critical taped interviews
in question. Parenthetically, in the materials you sent me from your file in Tai Dang's case, I do
not have the tape recordings of the statements of the two prostitutes from Sacramento. Please
review any materials you may still have in Tai Dang's case and forward these tapes to me right
away.

Next, in reviewing what you sent me in connection with Tai Dang's file from your office,
I have noted that in connection with the tape recording of the telephone calls made by Tai Dang
to Tina Ha shortly after his arrest while he was in the Sacramento County Jail, the tape that you
had only consisted of the second side of the apparent original of that tape. In fact, I have noted
in the materials in Tai Dang's file from your office that the transcript you had prepared of those
telephone calls by a certified Vietnamese interpreter, only consists of one side of the tape which
encompasses about half of the next to last call, and all of the last call, on the tape of the calls
made by Tai Dang to Tina Ha. However, the prosecutor's transcript, which apparently only was
prepared by a police officer who only was familiar with the Vietnamese language, and not by a
certified Vietnamese interpreter, includes all of the telephone calls from Tai Dang to Tina Ha
that were included on the tape. This tends to indicate to me that at no time prior to, or during,
Tai Dang's trial you ever had in your possession the full and complete tape of all of the
telephone calls from Tai Dang to Tina Ha as allegedly contained on the original tape of those
calls. In turn, this would suggest to me that you never had a certified Vietnamese interpreter
review the contents on the first side of the original tape of the recorded telephone calls from Tai
Dang to Tina Ha, which would include the pertinent references where Tai Dang at one point
allegedly said to Tina Ha, "Yeah, I lost . . . I've lost," and where Tina Ha purportedly said, "And

Javier Rios, Esq.                                          -10-
RE: <u>People v. Dang</u>

the thing about -- murd --?" What I need to know from you is that in connection with your
preparation for trial did you ever have a full and complete copy of the tape recording of all of the
telephone calls from Tai Dang to Tina Ha which were made by Tai Dang from the Sacramento
County Jail, and if you ever had a certified Vietnamese interpreter review that full and complete
tape recording to see if the transcript prepared by the police officer who only was familiar with
the Vietnamese language was actually a true and correct interpretation of what actually was said.
Parenthetically, in the materials you already sent to me, I obviously do not have a full and
complete tape recording of all of the telephone calls made by Tai Dang to Tina Ha from the
Sacramento County Jail. If you did receive a full and complete tape of those telephone calls,
please forward that tape to me right away.

        Lastly, there are several matters that appear to exist in connection with Tai Dang's case
that you once had in your possession but which have not been sent to me. These matters are as
follows: (1) the letters Tai Dang provided to you which were sent to Tai Dang by Tina Ha while
he was in custody; (2) a letter that either Tai Dang gave to you, or was sent to you, by a potential
alibi witness who apparently went by the name of Anh; (3) any and all defense investigation
reports and notes of interviews with potential alibi witnesses or any other witnesses that were
interviewed in connection with Tai Dang's matter; and (4) any and all photographs provided to
you by the prosecutor in connection with discovery in Tai Dang's case. I would appreciate you
reviewing anything you may still have in your office concerning Tai Dang's case, and that you
send to me not only all of the matters I just have delineated, but anything else that you may have.

        I know that some of the questions I am asking you as set forth hereinabove may be rather
pointed and direct. However, in representing Tai Dang on appeal I need to know your answers
in order to determine whether I need to file a petition for writ of habeas corpus setting forth
allegations of ineffective assistance of trial counsel. Please understand that I am trying my best
to represent Tai Dang in his appellate process. In connection with my work in that regard, I
really do need to get a response from you within **three weeks** from the date of this letter. If you
have any questions, or if you need copies of the parts of the record in order to assist you in
answering my questions, please contact me right away.

                                                Very truly yours,

                                                Arthur Dudley

AD/mcb
cc: Sixth District Appellate Program
    Tai Quoc Dang

D(32)

# Page, Salisbury & Dudley · Attorneys at Law

605 Center Street · Santa Cruz · California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Nikki Whitehead
Matthew A. Mohun

**Telephone (831) 429-9966**
Facsimile (831) 427-2132

July 11, 2001

Tai Quoc Dang, P-83131
Calipatria State Prison
P. O. Box 5002
Calipatria, CA 92233-5002

> RE: People v. Tai Quoc Dang
> Court of Appeal, Sixth Appellate District
> Case Number H021681

Dear Mr. Dang:

As you can see from the copy of the enclosed letter that I recently sent to your trial court attorney, I have raised to him a number of areas concerning his trial court performance which has both been troubling to you and me. I will not repeat those areas in this letter since they are covered in some depth in the letter that I sent to your trial court attorney.

Nevertheless, you can see from the enclosed letter, after locating and reviewing a copy of the actual police report in connection with the prior incident at the Hoan My Restaurant, I too agree with you that the prosecutor in your case presented a completely inaccurate and distorted version of what occurred in that prior matter. I am at a complete loss as to why your trial court attorney did absolutely nothing to prevent that distortion. Also, I am at a complete loss to understand why your trial court attorney did little or nothing to prevent any mention whatsoever of that prior matter whether in a distorted version or in an accurate version.

Next, with regard to the taped telephone calls between yourself and Tina Ha shortly after your arrest in Sacramento, it really does in fact appear that your trial court attorney never had in his possession the first side of that tape which included the conversations where you purportedly said the words "I lost" and Tina Ha purportedly used the partial word "murd." If I can eventually obtain a full and complete copy of the tape in question, after which a certified translator can confirm your suspicions about what actually was said or not said, an extremely interesting issue of ineffective assistance of counsel can be raised in a habeas corpus petition.

· **D(33)**

Tai Quoc Dang, P-83131                    -2-                    July 11, 2001
RE: People v. Dang

Additionally, as you can see from the enclosed letter, I still have not received from your
trial court attorney the letters you gave him from both Tina Ha and the potential alibi witness. I
recently have talked on the telephone with your trial court attorney and have specifically
requested orally, and now in writing in the enclosed letter, that he immediately send those letters
to me. As soon as I have them I will let you know right away. Also, as soon as I get a written
response from your trial court attorney in connection with the various questions I have asked him
in the copy of the enclosed letter, I will send that response on to you.

Finally, with regard to the potential alibi witnesses you have mentioned to me, it is going
to be necessary for me to make an application to the appellate court for funds to have an
investigator locate and talk to those individuals. For your information, in the past the appellate
court has been very reluctant to grant an application for investigative funds. However, I will put
together the applicable application with all of the necessary facts in support thereof in order to
try to obtain the necessary funds. I will send a copy of that application to you. When I hear
from the Court of Appeal about how it has acted upon that application, I will let you know right
away.

Considering all of your circumstances, I hope everything is going well with you at this
time.

Very truly yours,

Arthur Dudley

AD/mcb
encls.

cc: Sixth District Appellate Program

D(34)



# Page, Salisbury & Dudley . Attorneys at Law

605 Center Street • Santa Cruz • California 95060-3804

Mitchell Page
Gordon J. Salisbury
Arthur Dudley
Sean Gallagher
Celeste DeNardo
Nikki Whitehead
Matthew A. Mohun

Telephone (831) 429-9966
Facsimile (831) 427-2132

October 4, 2001

Joanne McCracken
Deputy District Attorney
Santa Clara County District Attorney's Office
70 West Hedding Street
West Wing, Fifth Floor
San Jose, CA 95110

> RE: People v. Tai Quoc Dang
> Court of Appeal, Sixth Appellate District
> Case Number H021681
> Santa Clara County Superior Court Case Number C9927769

Dear Ms. McCracken:

As you may remember, I am the attorney representing Tai Quoc Dang in connection with his appeal from the Santa Clara County murder conviction that you prosecuted against him in that county. Several weeks ago I talked to you on the telephone concerning my request to obtain from you copies of some pertinent tape recordings from Tai Dang's case. As of today's date, I have not yet heard back from you concerning my request.

Specifically, one of the tapes involves the full and complete recordings of all of the telephone calls made by Tai Dang to Tina Ha from the Sacramento County Jail. In the list of tapes put together by the San Jose City Police Department in it investigation against Tai Dang (SJPD Case Number 98-325-1333), the copy of the tape that I did receive concerning these recorded telephone conversations only includes the second side. The first side of the tape is completely blank. The tape I received came from Javier Rios, who was the public defender that represented Tai Dang at his trial. The transcript you presented to the jury in this matter concerning these tape recorded telephone calls appears to be a full and complete transcript of both sides of the tape. The transcript that I received from Javier Rios of these tape recorded telephone conversations only encompasses the second side of the tape which conforms to the fact that Javier Rios only received a taped copy of the telephone conversations that included

D(35)