UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAI DANG, | No. C 07-3268 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| D. K. SISTO, warden, | |
| Respondent. | |

## INTRODUCTION

Tai Dang, a pro se prisoner, has filed a petition for writ of habeas corpus challenging a 2000 conviction. Now before the court for consideration is respondent's motion to dismiss the petition as untimely.

## BACKGROUND

A.  Court History

Dang was convicted in Santa Clara County Superior Court of first degree murder and being a felon in possession of a firearm and was found to have personally discharged a firearm causing death. He was sentenced on June 9, 2000, to 52 years to life in prison.

He appealed. On September 24, 2002, the California Court of Appeal affirmed the judgment of conviction. On December 11, 2002, the California Supreme Court denied his petition for review.

Dang filed state habeas petitions to challenge his conviction. On May 29, 2007, Dang filed a habeas petition in Santa Clara County Superior Court. On October 17, 2007, Dang filed

a petition in the California Court of Appeal, which was denied on November 30, 2007.

Shortly after filing his first state habeas petition, Dang filed this action. His petition was mailed to the court on June 19, 2007, and stamped "filed" on June 21, 2007.

Respondent moved to dismiss the petition as barred by the habeas statute of limitations. Dang opposed the motion, blaming his untimeliness on his appointed appellate counsel, Arthur Dudley.[1]

B.   Attorney/Client Relations

Most of the facts pertinent to the timeliness inquiry concern appellate counsel's repeated failures to respond to Dang's inquiries. The court describes the chronology in detail, starting at the point where the direct appeal was nearing completion as that is the only period relevant to the timeliness question. (Oddly, although appellate counsel mostly ignored Dang after the California Court of Appeal affirmed the conviction, the attorney and client had been in frequent and amicable contact about the case until that point in time. See Opposition, Exh. D(1) - D(46).)

On October 11, 2002, attorney Dudley sent a letter to Dang with a copy of the California Court of Appeal's decision affirming the conviction and a copy of a petition for rehearing he had filed. Attorney Dudley wrote that, if the California Supreme Court denied the petition for review, the next step would be to file a habeas petition in the Santa Clara County Superior Court. Dang received that letter, as he referred to it in later communications.[2]

On November 5, 2002, Dang received another letter from attorney Dudley that apparently

---

[1] The opposition brief was signed by inmate David Turner "writ writer and next friend for Tai Dang." Turner has not been given leave to appear as "next friend" and may not simply show up and start litigating in that capacity. His capacity as "writ writer" also does not authorize him to file briefs on behalf of other inmates. Dang is appearing pro se and should be signing his own filings because he will be held responsible for them. Out of an abundance of caution, the court has considered the opposition brief filed by Turner on Dang's behalf because otherwise, the motion would be considered unopposed. All further filings must be signed by Dang.

[2] Only the first page of a multi-page letter is in the exhibits Dang filed. See Opposition, Exh. D(46).

2

included the petition for review.[3]

On February 2, 2003, attorney Dudley apparently sent to Dang a letter in which he provided a copy of the California Supreme Court's denial of the petition for review and explained the process for seeking habeas relief and the deadline to do so. See Exh. G, p. 6 (State Bar stipulation of facts with Dudley). Dang apparently never received that letter. See id.

In a letter dated March 17, 2004, Dang asked attorney Dudley for his case file and stated that time was of the essence because he was under strict AEDPA statute of limitations requirements. Exh. D(49). Dudley apparently did not respond to that letter.

Within just eight days in June 2004, Dang sent three letters to Dudley. On June 16, 2004, Dang wrote to Dudley stating that he had just learned that the California Court of Appeal had issued its final decision and that the California Supreme Court had denied relief in February 2002. Exh. D(52) - D(53). Dang complained that Dudley had not kept him apprised of the progress of the appeal. Dang also complained that the "AEDPA statute of time limitations has run and/or expired" for the issues that had been raised on appeal, and he wanted to file a state habeas petition in Santa Clara County Superior Court regarding ineffective assistance of trial counsel. He asked Dudley to provide a declaration explaining why Dudley had not informed Dang that the appeal concluded. Dang also stated that, based on Dudley's October 11, 2002, letter, he understood that Dudley was going to file a habeas petition on his behalf and said "if not, please send me any information you may have received from my trial attorney, and a copy of all responses you may have received from him by mail. I will also need the transcripts, or the entire record on appeal sent to me ASAP." Exh. D(53).

---

[3]Dudley did not include any cover letter for the petition for review in his exhibits. However, in a June 22, 2004 letter, Dang referred to having received the petition for review and also referred to Dudley's "informational letter for the other steps that must be taken after the California Supreme Court [denies] the petition for review." See Exh. D(56); D(92). Dang's mail log also showed receipt of mail on November 5, 2002, from attorney Dudley's office. And Dang referred to his receipt of a letter from Dudley "explaining the alternatives regarding the Habeas petition assuming the California Supreme Court [sic] the petition for review." See Exh. D(66). From the record, it cannot be determined whether the "informational letter" to which Dang referred was the letter that accompanied the denial of the petition for review that he denied receiving, or the letter that accompanied the petition for review, or the letter that accompanied the California Court of Appeal's opinion.

3

Dang sent another letter to attorney Dudley on June 17, 2004, requesting "the work product case file." Exh. D(55). Dang reminded attorney Dudley to "[p]lease be aware that I am under strict Statue of limitation requirements as promulgated by the Anti-Terrorism and Death Penalty Act of 1996, therefore, <u>time</u>, is of the essence for me to successfully file a timely Petition for Writ of Habeas Corpus in the appropriate [stae court regarding my conviction." <u>Id.</u> (errors in source).

On June 22, 2004, Dang sent yet another letter to attorney Dudley, this time apologizing for accusing him of not sending a copy of the petition for review because he had inadvertently overlooked it, but reiterating that he had not received a copy of the order denying the petition for review. <u>See</u> Exh. D(56). He explained that he had "started jumping to conclusions after seeking legal advice from someone else who lead [sic] me to believe that you were no longer representing me, and, my time had expired for seeking review in the federal court via a Writ of Habeas Corpus." <u>Id.</u> He stated that he had "been referring to [Dudley's] informational letter for the other steps that must be taken after the California Supreme Court deny the petition for review." Dang explained that he was worried because he did not know what his attorney had been doing since the petition for review was denied.

Two days later, on June 24, 2004, Dang sent a complaint to the State Bar of California, accusing Dudley of failing to keep him apprised of the progress of the case. He stated that there had been no communication from Dudley since November 5, 2002 and that "[t]he federal AEDPA statutes of time limitations (one year) for seeking review of [his] Constitutional Claims via habeas corpus petition, has expired already." Exh. D(57); <u>see</u> Exh. D(60). Dang asked the State Bar to order Dudley to provide a declaration so he could establish an excuse for a late filing.

On August 13, 2004, Dang sent a letter to attorney Dudley, explaining that he had received a message that Dudley would be calling him in July, but Dudley had not contacted him. Exh. D(61). Dang complained to Dudley that the breakdown in communications led him to believe that Dudley's "assistance was terminated two years ago without any notice whatsoever

4

and, consideration for the AEDPA statute of time limitation that has expired already." Id. Dang wrote that he still had not received his case file and said that he intended to file a complaint with the State Bar (although he had already filed that complaint two months earlier).

On September 28, 2004, the State Bar responded to Dang's complaint, stating that the matter did not warrant action in light of information learned from Dudley in response to the State Bar's inquiry. According to the State Bar complaint analyst, "Dudley stated it is customary to volunteer to prepare the federal habeas corpus petition and maintain an appellate record in order to complete that work. Although Mr. Dudley contended that he sent you a letter explaining the alternatives including the AEDPA time limitations, he did not hear from you until the deadline had expired. He claimed that he would be willing to assist you soon in preparing any necessary paperwork showing that you were reasonably and in good faith unaware of the AEDPA limitations if that is the case and would assist you in preparing the habeas corpus petition itself. Please contact the State Bar of California in sixty (60) days if Mr. Dudley does not contact you about your position [sic]." Exh. D(64).

Dang wrote to attorney Dudley on October 4, 2004, accepting Dudley's offer to assist him in preparing the "necessary paperwork" that he was unaware of the statute of limitations and in preparing the habeas petition itself. Exh. D(65). Dang wrote that he had received Dudley's letter explaining the alternatives regarding a habeas petition if the California Supreme Court denied his petition for review, but did not remember any mention of the statute of limitations in the letter. Exh. D(66).

Attorney Dudley wrote back to Dang on November 7, 2004. He stated that he "had taken steps much earlier to prepare the federal habeas corpus petition, and I still have my notes in that regard. I will complete that paperwork shortly, along with the applicable declaration for you to sign with regard to your lack of knowledge concerning federal habeas corpus procedures." Exh. D(68). Attorney Dudley expected to finish the work within two weeks, but may not have done so: Dudley reported he had prepared a declaration dated November 23, 2004, but Dang never received anything. See Exh. D(87) (State Bar letter referring to Dudley's Nov. 23, 2004

5

1 declaration); Exh. F (Dudley's January 17, 2007 declaration stating he had prepared a petition
2 and mailed it to Dang on November 23, 2004); Exh. G, p. 7 (State Bar stipulation of facts).

3 Dang wrote to attorney Dudley on June 20, 2005, reminding him that he hadn't prepared
4 the promised petition and declaration regarding the delay. Exh. D(70).

5 On July 1, 2005, Dang file a form motion for production of transcripts in the Santa Clara
6 County Superior Court. Exh. D(71) - D(78). It is not clear whether Dang did this on his own
7 or with the assistance of attorney Dudley or someone else.

8 On August 16, 2005, Dang filed a second complaint with the State Bar of California,
9 again complaining about attorney Dudley's failures. He stated that the AEDPA one-year statute
10 of limitations had expired and again asked the State Bar to order attorney Dudley to provide a
11 declaration about the delay. See Exh. D(80) - D(81).

12 On September 14, 2005, Dang wrote to Dudley complaining about Dudley's failure to
13 respond to his inquiries. He explained that he needed the transcript and record on appeal to use
14 in preparing a habeas petition. Exh. D(82). Dang then wrote to the Sixth District Appellate
15 Program on October 28, 2005 (through whom the appointment of attorney Dudley had been
16 made), complaining that Dudley would not provide the record on appeal. He stated that as a
17 consequence of Dudley's failure to provide the record, Dang's "desire to raise collateral issues
18 on habeas corpus [has] been stalled and [his] tolling time to proceed to the federal courts
19 compromised." Exh. D(83). The Sixth District Appellate Project forwarded the letter to attorney
20 Dudley and asked him to respond. Exh. D(84).

21 On October 13, 2005, Dudley sent the client file to Dang. Exh. G, p. 7. Dang received
22 the file in January or February 2006. Opposition, p. 26.

23 On February 21, 2006, the State Bar investigator wrote to Dang and said that Dudley had
24 provided (1) a copy of a February 2, 2003 letter that Dudley said he sent to Dang that included
25 some blank forms for filing a federal petition and (2) a declaration dated November 23, 2004
26 explaining the delay. Exh. D(87) - D(88). The investigator wrote that Dudley offered to send
27 another copy of the petition package that Dang could return to him for filing in federal court.
28

On June 27, 2006, the State Bar investigator wrote to Dang explaining that Dudley had not responded to letters from the investigator in April 2006.

On January 17, 2007, attorney Dudley sent to Dang "the completed habeas corpus petition for your filing in federal district court" and a declaration from Dudley. Exh. F.

The State Bar entered into a stipulation as to facts and disposition with Dudley on February 6, 2007. Dudley received a public reproval for his misconduct in Dang's case. Exh. G.

## DISCUSSION

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

The first step is to determine when the limitations period began. Dang's conviction became final on March 11, 2003, 90 days after the California Supreme Court denied his petition for review. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999) (direct review period includes the period during which the petitioner could have sought further direct review, regardless of whether he did so). The presumptive deadline for Dang to file his federal petition was March 11, 2004. He missed the deadline by more than four years.

The next step is to determine whether to apply the provision that tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Dang receives no statutory tolling because the limitations period

expired long before his first state habeas petition was filed on May 29, 2007 (less than a month before he filed his federal petition).

The final step is to determine whether the limitations period should be equitably tolled. The one-year limitation period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), cert. denied, 523 U.S. 1, and cert. denied, 523 U.S. 1061 (1998), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999). Two standards have been articulated for determining whether equitable tolling is appropriate. The standard that has long been used in the Ninth Circuit is that equitable tolling would not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted). The Supreme Court articulated the standard differently, and stated that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (petitioner's lack of diligence in filing timely state and federal petitions precluded equitable tolling); Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace); Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."). The Ninth Circuit has not settled on a single consistent standard. See Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008) (declining to decide whether Pace standard differs from Beeler standard).

Under either articulation of the test, the petitioner bears the burden of showing that equitable tolling is warranted in his case. See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); Pace, 544 U.S. at 418. The petitioner also must show that the extraordinary circumstances "were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th

8

Cir. 2003). Spitsyn's mention of causation is important because it shows that equitable tolling is not susceptible to a simple yes/no kind of inquiry, but instead requires the court to determine whether equitable tolling is allowed for the circumstance and, if so, how much time should be tolled for the circumstance. That some delay is excused doesn't necessarily mean that all delay is excused under the equitable tolling doctrine.

The need for the circumstance supporting tolling to be causally linked to the delay proves to be the petitioner's downfall in this case. Dang was ill-served by his appellate counsel Arthur Dudley, who dragged his feet in providing the case file to Dang and dragged his feet in providing a habeas petition that he promised to prepare. Nonetheless, the attorney's errors simply do not explain enough of the delay. Dang does not show he is entitled to enough equitable tolling to save his petition, because he knew of the AEDPA statute of limitations no later than March 2004 and received his case file in January or February 2006, yet did not file his federal petition until June 2007.

Dang was aware of the statute of limitations by March 2004, as shown by his mention of it in March 2004 and June 2004 letters. At that point, Dang thought that the limitations period had already expired. Thereafter, he was trying to get a declaration from attorney Dudley to support a late petition. Dang wanted attorney Dudley to explain the delay to establish that Dang did not learn until June 2004 of the conclusion of direct appeal. Equitable tolling due to the lack of information about the statute of limitations therefore is not available for this petitioner who actually knew of the one-year limitations period. This is not a case where the attorney has misadvised his client of the statute of limitations deadline; indeed, Dang apparently learned about the statute of limitations from some source other than Dudley as he wrote that Dudley had not provided information about the AEDPA statute of limitations. See Exh. D(66).

The next point to consider is the impact of attorney Dudley's offers to prepare a habeas petition. On one hand, Dang knew attorney Dudley was not responding to his various requests and therefore shouldn't have expected that Dudley would provide further assistance. On the other hand, attorney Dudley repeatedly gave reassurances that he would provide further

1  assistance with the habeas petitions: (1) the State Bar relayed Dudley's offer to prepare a federal
2  petition in a September 2004 letter to Dang, (2) Dudley wrote directly to Dang in November
3  2004, and said he would provide the materials within a few weeks, (3) after Dang filed a second
4  State Bar complaint in August 2005, the State Bar informed him in February 2006 that Dudley
5  again offered to provide the petition package, and (4) Dudley finally sent the habeas package and
6  declarations to Dang in January 2007.  Rather than unequivocally terminate his representation
7  of Dang when the direct appeal concluded, attorney Dudley inexplicably continued to offer to
8  (but not actually do) habeas work that may well have been beyond the scope of his appointment.
9  There is some force for the view that by the beginning of January 2005, when Dudley failed to
10 provide the promised materials, no reasonable client would have continued to wait for them but
11 would instead have taken on the chore of filing the petition pro se.  Cf. Malcolm v. Payne, 281
12 F.3d 951, 963 (9th Cir. 2002) (prisoner's "understandable" choice to postpone seeking federal
13 habeas relief while pursuing state clemency proceedings was not beyond her control and
14 therefore did not warrant equitable tolling).  However, the court will give Dang the benefit of
15 the doubt and assume that his continued wait for attorney Dudley to act was reasonable until he
16 received the file in January/February 2006, at which time Dang should have acted to protect his
17 own interests rather than rely on an attorney who was obviously failing to deliver on his
18 promises.  See Spitsyn, 345 F.3d at 801-02.

19       Attorney Dudley's delay in providing the requested file does not support equitable tolling
20 for the many months after it was provided.  Dang started asking attorney Dudley for his file in
21 March 2004, but did not receive it until January or February 2006.  An attorney's failure to
22 provide the petitioner with parts of his file supports equitable tolling.  See Ford v. Hubbard, 330
23 F.3d 1086, 1107 (9th Cir. 2003) (remanding to district court for development of facts regarding
24 the failure to provide portions of file, and to assess its legal significance), rev'd on other grounds
25 sub nom. Pliler v. Ford, 542 U.S. 225 (2004); see also United States v. Battles, 362 F.3d 1195,
26 1197-98 (9th Cir. 2004) (§ 2255 petition) (remanding to district court to determine whether trial
27 counsel's failure to provide petitioner with transcript warranted equitable tolling).  Here, the file
28

was provided to the petitioner 17-18 months before the petitioner filed his federal habeas petition. Had Dang filed within a reasonable time after receiving the file from his attorney, the equitable tolling doctrine might save his late petition, but here there was too much time between the receipt of the file and the filing of the petition to lay all the blame for the late filing on the attorney's delay. For the period between the receipt of the file in January/February 2006 and the filing of the federal petition in June 2007, there was no circumstance standing in Dang's way, see Pace, 544 U.S. at 418, or that made it impossible to file his federal petition, see Beeler, 128 F.3d at 1288. The filing of the state petition does not affect this analysis because Dang did not file his first state habeas petition until May 29, 2007, just three weeks before he filed his federal petition. Dang's non-filing in that 17-18 month time period also reflects an absence of diligence. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1061 (9th Cir. 2007) (no equitable tolling where petitioner was not diligent in that he failed to seek any state court relief for six years, or to take advantage of available paralegal assistance); Spitsyn, 345 F.3d at 799, 802 (remanding for consideration whether petitioner was diligent in not filing petition until eight months after receiving file).

The absence of diligence is even more pronounced in the five months preceding the filing of the federal and state petitions. Dang has not shown that he acted with diligence after he received the completed habeas corpus petition for his filing in federal court. The materials were sent to Dang on January 17, 2007, yet Dang offers no explanation of why he did not mail his federal petition until June 19, 2007 (or mail his state petition until May 29, 2007). Nothing stood in his way at that point – he merely had to put the materials in the mail. The pendency of the State Bar case against attorney Dudley provided no reason to wait to file the federal petition, as Dang already had received the federal petition prepared by Dudley and the declarations prepared by Dudley to explain the delay. Nothing the State Bar could or did do would make a difference in the habeas actions in state court or federal court. Dang's failure to take the simple step of mailing a completed petition for several months shows a total lack of diligence, especially by a petitioner who knew the deadline to file had long passed. See Bryant, 499 F.3d at 1061; Miles,

11

1  187 F.3d at 1107.

2  Dang's petition was untimely filed and is barred by the habeas statute of limitations. The unexplained delay of 17-18 months between the provision of the file by the attorney and the filing of the federal petition for writ of habeas corpus does not support equitable tolling and shows a lack of diligence. Alternatively, the unexplained delay of five months between the receipt of a fully-prepared petition for writ of habeas corpus and the mailing of that document shows a lack of diligence. Equitable tolling is therefore disallowed for both those periods.

## CONCLUSION

Respondent's motion to dismiss is GRANTED. (Docket # 6.) The current petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1). Petitioner's motion to file an oversized brief is GRANTED. (Docket # 10.)

The clerk will close the file.

IT IS SO ORDERED.

DATED: June 23, 2008

SUSAN ILLSTON
United States District Judge